**SIGNED THIS: August 26, 2005**

_____

**THOMAS L. PERKINS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| FLEMING PACKAGING CORPORATION, ) | No. 03-82408 |
| a Delaware corporation, ) | |
| Debtor. ) | |
| _____ ) | |
| GARY T. RAFOOL, Chapter 7 Trustee, on behalf ) | |
| of the Estate of Fleming Packaging Corp., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No.  04-8166 |
| ) | |
| THE GOLDFARB CORPORATION, a Canadian ) | |
| corporation, MARTIN GOLDFARB, STANLEY ) | |
| GOLDFARB, ALONNA GOLDFARB, GEORGE ) | |
| GIALENIOS and JOE ANDERSEN, individually ) | |
| and as former directors and/or officers of Fleming ) | |
| Packaging Corp., ) | |
| Defendants. ) | |
| _____ ) | |
| GEORGE GIALENIOS and JOSEPH ANDERSEN, ) | |
| Cross-Plaintiffs, ) | |
| vs. ) | |
| ) | |
| THE GOLDFARB CORPORATION, a Canadian ) | |
| corporation, MARTIN GOLDFARB, STANLEY ) | |
| GOLDFARB and ALONNA GOLDFARB, ) | |
| Cross-Defendants. ) | |

## <u>O P I N I O N</u>

Before the Court is the Motion filed by the Goldfarb Corporation (GOLDFARB),

Martin Goldfarb (MARTIN), Stanley Goldfarb (STANLEY) and Alonna Goldfarb

(ALONNA), to Dismiss Counts I, II, V, VI and VII of the Amended Complaint brought

against them by Gary T. Rafool, Chapter 7 Trustee (TRUSTEE).  Counts III and IV of the

Amended Complaint, directed against George Gialenios (GIALENIOS) and Joseph

Andersen (ANDERSEN), are not presently before the Court.[1]

**FACTUAL BACKGROUND**

The following facts alleged in the Amended Complaint are assumed to be true for

purposes of this motion.  The Debtor, Fleming Packaging Corp. (DEBTOR), and its two

subsidiary corporations, fp Label Company and fp Estate Incorporated, manufacturers of

labels for various consumer, food and household products and distributors of equipment

and supplies for the wine making industry, encountered financial troubles in 1999, after

having rejected an offer to sell its operations as a going concern for over $100 million in

1998.  At that time, GOLDFARB, a Canadian corporation, owned the majority of the

DEBTOR'S stock and controlled the DEBTOR'S Board of Directors.[2]  STANLEY, MARTIN

and ALONNA were directors and officers of the DEBTOR.  Both ALONNA and MARTIN

were officers, directors and shareholders of GOLDFARB.  STANLEY was a director and

shareholder of GOLDFARB.

[1]GIALENIOS and ANDERSEN have answered the Amended Complaint and asserted a cross-claim against the remaining Defendants.  An answer to the cross-claim has been filed.

[2]This allegation is disputed by the GOLDFARB DEFENDANTS.

MARTIN, ALONNA and STANLEY will be collectively referred to as the "GOLDFARB INDIVIDUALS" and MARTIN, ALONNA, STANLEY and GOLDFARB (the corporation) will be collectively referred to as the "GOLDFARB DEFENDANTS."

As early as December, 2001, the DEBTOR defaulted on its obligations under an Amended and Restated Loan Agreement dated August 27, 1997 ("Loan Agreement") between the DEBTOR, Bank One (as agent for the DEBTOR'S prepetition lenders, referred to collectively as "BANK ONE") and fp Label and fp Estate, as guarantors. On March 11, 2002, in conjunction with the Third Amendment to the Loan Agreement, GOLDFARB entered into an agreement ("Letter Agreement") whereby GOLDFARB agreed to make a loan of $1.5 million to the DEBTOR upon the sale of its "lid business," provided the gross proceeds of the sale exceeded $18 million.[3] In late 2002, pursuant to the Letter Agreement, GOLDFARB transferred $765,000 to the DEBTOR.

In the months leading up to February, 2003, the GOLDFARB INDIVIDUALS met with BANK ONE to renegotiate the Loan Agreement. According to the recitations of that document, BANK ONE was owed $28,797,347.02, secured by all of the assets of the DEBTOR. On February 10, 2003, the DEBTOR, its subsidiaries, GOLDFARB, and BANK ONE entered into the "Fifth Amendment" (FIFTH AMENDMENT) to the Loan Agreement. Pursuant to that agreement, the GOLDFARB INDIVIDUALS resigned as officers and directors of the DEBTOR. The parties agreed that the DEBTOR'S operations would be sold through an investment banker. GOLDFARB was released of its obligation

---

[3] The allegation of the Amended Complaint (p. 5 par. 24) is that GOLDFARB agreed to "contribute" the funds.

to pay the remaining $735,000 due under the Letter Agreement and was to receive 3.5% of the net proceeds from the sale of the business operations, in consideration for its loan of $765,000 under the Letter Agreement. GOLDFARB was also released from its guaranty of a $300,000 stay bonus that the DEBTOR was required to pay GIALENIOS. On February 25, 2003, the DEBTOR transferred $33,269 to GOLDFARB.

According to the allegations of the Amended Complaint, the DEBTOR'S liabilities exceeded the DEBTOR'S assets at least as early as January, 2002. Overall, in 2002, the DEBTOR'S operations lost $29.2 million. From January 1, 2003, through February 10, 2003, the DEBTOR's operations lost another $2.2 million. Throughout this entire period, the GOLDFARB INDIVIDUALS held secret meetings with BANK ONE in order to keep information regarding the DEBTOR'S deteriorating financial condition from the other directors and officers and from its employees, and to enter into transactions affecting the DEBTOR'S business operations to which those other parties were not privy.

The DEBTOR and its two subsidiaries filed Chapter 11 petitions on May 15, 2003. In June, 2003, with approval of the Court, the DEBTOR'S operations were sold for approximately $26 million. At that time, the DEBTOR owed about $38 million to creditors. The cases were converted to Chapter 7 on January 9, 2004, and Gary T. Rafool was appointed as TRUSTEE in all three cases. The TRUSTEE filed an Adversary Complaint which sets out seven counts against the GOLDFARB DEFENDANTS, GALENIOS and ANDERSEN. Counts I and III are against MARTIN, ALONNA and STANLEY and against GALENIOS and ANDERSEN for breach of their fiduciary duties. Counts II and IV are against MARTIN, ALONNA, and STANLEY (Count II) and against GALENIOS and

4

ANDERSEN for "deepening insolvency."  Counts V, VI and VII are against GOLDFARB

to recover preferential transfers and fraudulent conveyances under Sections 544, 547 and

548 of the Bankruptcy Code.[4]

The GOLDFARB DEFENDANTS moved to dismiss all of the counts of the Amended

Complaint directed at them.  The GOLDFARB INDIVIDUALS argue that the TRUSTEE

lacks standing to assert claims for breach of fiduciary duty and deepening insolvency.  The

GOLDFARB INDIVIDUALS also argue that Count III of the Amended Complaint fails to

state a claim for deepening insolvency because the TRUSTEE does not allege facts showing

that the GOLDFARB INDIVIDUALS fraudulently prolonged the DEBTOR'S corporate life

beyond insolvency.  In addition, GOLDFARB argues that Counts V, VI and VII, seeking to

avoid certain transfers as preferences or fraudulent transfers, fail to state a claim under

those provisions because the challenged transfers were not the DEBTOR'S property.

**ANALYSIS**

**Legal Standard for Motions to Dismiss under Rules 12(b)(1) and 12(b)(6)**

It is well established that the party seeking to invoke the jurisdiction of the federal

court has the burden of establishing that jurisdiction exists. *Lee v. City of Chicago*, 330 F.3d

456 (7th Cir. 2003).   In ruling on a motion to dismiss under F.R.C.P. 12(b)(1) for lack of

standing based on a facial attack upon the allegations in the pleadings, the court must

accept as true all material allegations of the complaint, drawing all reasonable inferences

therefrom in the plaintiff's favor.  *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45

L.Ed.2d 343 (1975).  The court may properly consider evidence outside the pleadings.

---

[4]Count V is brought under Section 547; Count VI is brought under Section 548(a)(1)(B); and Count VII is brought pursuant to Section 544, in combination with 740 ILCS 160/5 (Illinois Uniform Fraudulent Transfer Act).

Similarly, on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted, a court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000). Dismissal is unwarranted unless it appears beyond doubt that the plaintiff can establish no set of facts in support of his claim which would entitled him to relief. *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690 (7th Cir. 1999).

**Standing**

The GOLDFARB INDIVIDUALS assert that the TRUSTEE lacks standing to sue them for breach of fiduciary duty and deepening insolvency under Counts I and II of the Amended Complaint because those claims belong exclusively to creditors of the corporation under Delaware law.[5]  Contending that the TRUSTEE, standing in the shoes of the DEBTOR, can only bring causes of action held by the corporation and not claims belonging to individual creditors, the GOLDFARB INDIVIDUALS assert that upon insolvency the duties owed by directors to the corporation's shareholders shift to the creditors of the corporation and that any claim for breach of fiduciary duty must thereafter be brought by the creditors themselves.   The GOLDFARB INDIVIDUALS also argue that the TRUSTEE cannot derive his standing from the avoiding powers granted to him under the Bankruptcy Code, contending that Section 544 does not authorize a trustee to bring a creditor's cause of action.

---

[5]The parties agree that Delaware law controls, as the DEBTOR'S state of incorporation.

6

In response, the TRUSTEE contends that the GOLDFARB INDIVIDUALS have misconstrued Delaware law.  Relying on the recent case of *Production Resources Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772 (Del.Ch., Nov. 17, 2004), the TRUSTEE asserts that upon insolvency, the existing duties owed by the directors to the corporation are not destroyed, but rather that additional duties, owed to the corporation's creditors, arise. The TRUSTEE maintains that he may properly bring this action directly on behalf of the DEBTOR.  In addition, because those duties which arise upon insolvency are owed to the creditors as a class and because any recovery for a breach of those duties would inure to the corporation, the TRUSTEE contends that he has standing to bring those claims derivatively.  This Court agrees.

A claim charging directors of a corporation with breach of fiduciary duty is a classic derivative claim.  Such wrongs harm the corporation directly and all of the corporation's stockholders indirectly.   Recognized by the Supreme Court long ago, this principle is far from a novel proposition:

> A director is a fiduciary.  So is a dominant or controlling stockholder or group of stockholders.  Their powers are powers in trust.  Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein.  The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain.  If it does not, equity will set it aside.  While normally that fiduciary obligation is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee.  For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation – creditors as well as stockholders.  (Citations omitted).

*Pepper v. Litton,* 308 U.S. 295, 306-07, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939).

Acknowledging that under Delaware law the directors of an insolvent corporation are said to hold their powers "in trust" for creditors because the value of the creditors' claims are likely to be affected by the directors' business decisions, the court in *In re Production Resources Group, supra*, noted that even when a corporation becomes insolvent, breaches of fiduciary duty remain harms to the company itself and while creditors may be entitled to bring suit, the nature of the suit remains derivative.[6]  The court cited with approval *In re Healthco Intern., Inc.*, 208 B.R. 288 (Bankr.D.Mass. 1997), involving an action brought by the Chapter 7 trustee against participants in a leveraged buyout of the debtor, including the officers and directors for breach of their fiduciary duties of loyalty and care.  Answering the challenge made by the defendants to the trustee's standing, the *Healthco* court stated:

> It is of course true a trustee in bankruptcy is unable to enforce a claim belonging to a creditor.  But the Trustee asserts a claim which belonged to [the debtor,] not its creditors.  The Trustee contends the defendants breached their fiduciary duties *owed to [the debtor]*.  Any [debtor] claim is an interest in property which passed to the bankruptcy estate.  The Trustee can bring any suit [the debtor] could have brought, including suits against directors and controlling shareholders for breach of fiduciary duty.  (Emphasis in the original; footnotes omitted).

208 B.R. at 300.

Contrary to the GOLDFARB INDIVIDUALS' characterization of the court's ruling in *Production Resources* as an aberration, emphasizing that it did not involve an action by a bankruptcy trustee, the court in *In re Adelphia Communications Corp.*, 323 B.R. 345 (Bankr.S.D.N.Y. 2005), approved that interpretation, adding that:

> [T]he transformation of a creditor into a residual owner does not change the nature of the harm in a typical claim for breach of fiduciary duty by

---

[6]The matter was before the court on a motion by a single creditor seeking the appointment of a receiver under state law and alleging both a direct claim for breach of fiduciary duty and a derivative claim on behalf of all of the corporation's creditors.

corporate directors. Rather, while creditors would then have standing to assert that the self-dealing directors had breached their fiduciary duties by improperly harming the economic value of the firm (to the detriment of the creditors who had legitimate claims on its assets), no particular creditor would have the right to the recovery; rather *all* creditors would benefit when the firm was made whole and the firm's value was increased, enabling it to satisfy more creditor claims in the order of their legal claim on the firm's assets.

323 B.R. at 386. *See also, Pereira v. Farace*, 413 F.3d 330 (2nd Cir. 2005); *In re Del-Met Corp.*, 322 B.R. 781 (Bankr.M.D.Tenn. 2005)(Chapter 7 trustee has standing to pursue breach of fiduciary duty claims); *In re Unifi Communications, Inc.*, 317 B.R. 13 (D. Mass. 2004)(directors continue to owe duties to corporation after insolvency which bankruptcy trustee has standing to bring).

The cases relied upon by the GOLDFARB INDIVIDUALS are inapposite. In *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the court held that the Chapter X trustee did not have standing to assert, on behalf of debenture holders, claims against the indenture trustee based on misconduct, the recovery of which would inure only to those debenture holders. In pointing out that the debtor had no claim against the indenture trustee, the court noted that the trustee had taken broad aim, bringing "every conceivable claim that [was] available to him as trustee," including a suit against the debtor's former officers for waste. *Caplin* held only that the trustee could not assert claims on behalf of particular creditors for specific claims.[7]

---

[7] Referring to the trustee's objection to the indenture trustee's claim filed in the reorganization proceeding for services rendered, the court in *Caplin* carefully noted this distinction, stating:

> This objection differs from the other claims in one respect: i.e., it is an attempt to preserve the remaining assets of the debtor for all creditors other than [the indenture trustee], whereas the other claims [sic] represent an attempt by the petitioner to increase the assets of the debtor for the benefit of a specific class of creditors, the debenture holders.

The Court's decision in *Caplin* has been broadly (and in this Court's view, incorrectly) interpreted by some courts to preclude an action by a bankruptcy trustee on behalf of creditors *generally* against third parties. *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222 (8th Cir. 1987)(holding that an alter ego cause of action belonged to the creditors under applicable state law). Though the GOLDFARB INDIVIDUALS acknowledge that the Seventh Circuit Court of Appeals narrowly interpreted *Caplin* to permit a trustee to bring an *alter ego* claim on behalf of all of the debtor's creditors, distinguishing between "general" and "personal"claims in *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1348 (7th Cir. 1987), the GOLDFARB INDIVIDUALS, relying on *Steingberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994), suggest that *Koch's* characterization of a "general claim" as one which applies to all creditors has been undermined.[8] In *Steinberg*, the bankruptcy trustee sought to pierce the corporate veil of the debtor to hold the shareholders liable for a debt for unfunded pension obligations of the debtor's employees. Finding the case was devoid of any allegations of any injury to the corporation, the court

---

Identified as the third ground for rejecting the trustee's position, the court observed that the trustee's suit on behalf of the debenture holders did not pre-empt any actions by individual debenture holders, noting that three other private actions were in fact then pending. The court foresaw the obviously detrimental consequences of permitting the trustee to proceed, likely to result in duplicative litigation.

[8] The court in *Koch* articulated the distinction:

A cause of action is "personal" if the claimant himself is harmed and no other claimant or creditor has an interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors. If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim.

831 F.2d at 1348-49.

Thus, the GOLDFARB INDIVIDUALS' assertion that it is the TRUSTEE who must allege a "separate and distinct" injury to the corporation, has it backwards.

identified the only injured party as the pension fund.  Though the court may have questioned the continued usefulness of the "personal/general" dichotomy, it did so only as a matter of semantics.  The court affirmed the underlying principle, drawing a distinction between a creditor's interest in the claims of the corporation against a third party, which are enforceable by the trustee, and the creditor's own direct – not derivative – claim against the third party, which can be enforced only by the creditor.  That principle of *Koch* remains solid.  It is only the trustee who may represent the interests of the creditors as a class.  *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998).[9]  Again paying tribute to that principle, the Seventh Circuit, citing *Koch*, noted that "once the bankruptcy commenced, it became the collective proceeding through which such [derivative] claims are vindicated for creditors' mutual benefit" and that "[c]reditors cannot bypass a bankruptcy by seizing a debtor's choses in action; they are assets of the estate."  *In re A.G. Financial Service Center, Inc.*, 395 F.3d 410 (7th Cir. 2005).

The GOLDFARB INDIVIDUALS' reliance on *In re Shadduck*, 208 B.R. 1 (Bankr.D. Mass. 1997) is far afield.  In that case, the trustee, seeking first to deny the debtor's discharge, also sought to enforce those "likely" nondischargeable claims of the debtor's various creditors against the nonexempt portion of the debtor's individual retirement account, concerned that the debtor would dissipate the funds in the interim.  Thus, the trustee was in fact pursuing specific, post-discharge claims of the individual creditors.  A more remote scenario is hard to conjure.

---

[9] Contrary to the GOLDFARB INDIVIDUALS' assertion, other courts have found that a bankruptcy trustee can bring a claim for breach of fiduciary duty against the officers and directors of a corporation under Section 544(a), characterizing the underlying state law cause of action as a "creditor's bill."  *See, Wieboldt Stores, Inc. By and Through Raleigh v. Schottenstein*, 131 B.R. 655 (N.D.Ill. 1991).  As the court recognized in *In re Porter McLeod, Inc.*, 231 B.R. 786 (D.Colo. 1999), the trustee may elect "debtor" status under Section 541(a) or "creditor" status under Section 544(a).

The GOLDFARB INDIVIDUALS do not go so far as to suggest that the claim for breach of fiduciary duty belongs only to one particular creditor rather than to all creditors as a class.  It is, of course, the essence of a claim that is derivative in nature, that any damages recovered may not be retained by the nominal plaintiff to the exclusion of the larger class of similar interest holders.  *Moffatt Enterprises, Inc. v. Borden Inc.,* 807 F.2d 1169, 1176 (3rd Cir. 1986).  It is this principle of group benefit that is the primary rationale for the rule that bankruptcy trustees have standing to bring derivative actions.

In this Court's view, the position of the GOLDFARB INDIVIDUALS fails to appreciate the fundamental policies underlying the Bankruptcy Code and the statutory role and responsibilities of the bankruptcy trustee.  One of the most fundamental purposes of a proceeding in bankruptcy is to ensure an equal distribution of assets among creditors. In order to accomplish that purpose, it is "absolutely essential that all claims be satisfied in one forum."  *Franklin Sav. Corp. v. Office of Thrift Supervision, Dept. of Treasury*, 213 B.R. 596 (D.Kan. 1997).  Count I of the TRUSTEE'S Amended Complaint alleges generally that as a result of the alleged breaches of fiduciary duty, the DEBTOR suffered substantial injury to its property.  That allegation sufficiently pleads harm to the DEBTOR, recompense for which would inure to the benefit of all creditors and, as such, undeniably states a claim that is squarely within the TRUSTEE'S purpose and powers .

Maintaining that they are cloaked by the business judgment rule – a presumption "that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company"[10] – the GOLDFARB INDIVIDUALS contend that the actions alleged by the

---

[10]*Emerald Partners v. Berlin,* 787 A.2d 85, 90 (Del.Supr. 2001).

TRUSTEE are insufficient to rebut the rule's presumptive effect. They admit, however, that the rule offers no protection against acts of self-dealing.[11] "Self-dealing" refers to the situation where a corporate fiduciary is on both sides of a transaction. *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1169 (Del. Supr. 1995). Here, the Amended Complaint adequately alleges a conflict of interest with respect to each of the GOLDFARB INDIVIDUALS by reason of the interlocking directorates and the allegations of Count I focus upon violations of the duty of loyalty. The TRUSTEE alleges that the GOLDFARB INDIVIDUALS engaged in self-dealing by, *inter alia*, representing both the DEBTOR and GOLDFARB in the negotiation of the FIFTH AMENDMENT. Moreover, the protection of the business judgment rule is not available against a claim of breach of the duty of loyalty.[12] That rule is not a basis for dismissal of a complaint that alleges self-dealing.

As an endnote, the GOLDFARB INDIVIDUALS point out that the DEBTOR, as permitted under Delaware general corporation law, adopted a provision in its Charter which exculpated directors from breaches of the duty of care. Based on the court's ruling in *Production Resources*, they represent that they will raise that clause as a defense should

---

[11] Rather, as the court explained in *In re Adelphia Communications Corp.*, 323 B.R. 345 (Bankr.S.D.N.Y. 2005):

> In Delaware . . . where, as here, directors considering a transaction are not disinterested and have a personal stake in the outcome, their determination is not entitled to the deference usually given under the "business judgment" rule. Instead they must show the "entire fairness" of the transaction, or that it is "intrinsically fair."

*See, also, In re Sheffield Steel Corp.*, 320 B.R. 405 (Bankr.N.D.Okla. 2004) (under Delaware law, a complaint alleging that directors transacted business on behalf of the corporation that resulted in their personal enrichment states a cause of action for breach of the duties of good faith and loyalty and the burden is on the directors to prove that the transaction was fair to the corporation.)

[12] The rule's protections can only be claimed by disinterested directors whose conduct meets the tests of business judgment. Directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing. *Cede & Co. v. Technicolor Inc.*, 634 A.2d 345, 361 (Del.Supr. 1993). Directors must also inform themselves, prior to making a business decision, of all material information reasonably available to them. *Shamrock Holdings, Inc. v. Polaroid Corp.*, 559 A.2d 257, 269 (Del.Ch. 1989). They must then act with requisite care in the discharge of their duties. *Id.*

the Court deny their motion to dismiss. The validity of that defense, when properly raised, will be an issue for another day.  The Court notes, however, under Delaware law, an exculpatory provision cannot eliminate a director's liability for a breach of the duty of loyalty.  8 Del.C. § 102(b)(7);[13] *Pereira v. Farace*, 413 F.3d 330 (2nd Cir. 2005) (applying Delaware law).

In conclusion, this Court finds that the TRUSTEE, as successor to the DEBTOR'S rights under Section 541 of the Bankruptcy Code, has standing to assert breach of fiduciary claims against the GOLDFARB INDIVIDUALS for harm suffered by the DEBTOR. Alternatively, to the extent those claims are properly brought as derivative suits under state law in the name of a creditor for the benefit of the DEBTOR or the DEBTOR'S creditors as a whole, the TRUSTEE also has standing.  The Motion to Dismiss Count I will be denied.

**Deepening Insolvency**

The GOLDFARB INDIVIDUALS seek the dismissal of Count II, contending that it does not state a cause of action for deepening insolvency because it fails to allege that the GOLDFARB INDIVIDUALS "fraudulently prolonged" the DEBTOR'S corporate existence. As admitted by the TRUSTEE, the emerging theory of "deepening insolvency" has not been uniformly applied nor universally embraced. *See*, Sabin Willet, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549 (Feb. 2005); Jo Ann J. Brighton, *Deepening Insolvency*, 23-3 Am.

---

[13] That section, setting forth the permissible provisions of a certificate of incorporation, provides, in part:

A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law. . . .

Bankr. Inst. J. 34 (Apr. 2004). Some courts have recognized "deepening insolvency" as an independent tort. *See, e.g., Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340 (3d Cir. 2001); *In re Del-Met Corp.*, 322 B.R. 781 (Bankr.M.D.Tenn. 2005); *In re Exide Technologies, Inc.*, 299 B.R. 732 (Bankr.D.Del. 2003). Concluding that "deepening insolvency" constituted a valid cause of action under Pennsylvania law, the court in *Lafferty* characterized the essence of the action as the "fraudulent expansion of corporate debt and prolongation of corporate life." Other courts have viewed "deepening insolvency" as a measure of damages, not as an independent cause of action. *Schacht v. Brown*, 711 F.2d 1343 (7th Cir. 1983); *In re Global Service Group, LLC*, 316 B.R. 451 (Bankr.S.D.N.Y. 2004). The theory of "deepening insolvency" has also been rejected outright. *Bondi v. Citigroup, Inc.*, 2005 WL 975856 (N.J.Super.L. 2005).

In *In re Exide Technologies, Inc.*, 299 B.R. 732 (Bankr.D.Del. 2003), the bankruptcy court predicted that Delaware courts would recognize such a cause of action. The significance of recognizing a deepening insolvency cause of action is diminished when the defendants of the action are officers and directors of the corporation, who clearly owe fiduciary duties to the corporation, as opposed to outside professionals such as accountants or financial advisors. *See, Deepening Insolvency in Alabama: Is it a Tort, a Damages Theory or Neither of the Above?*, 66 Ala. Law. 190 (May 2005). In this Court's view, notwithstanding the path taken by the court in *Exide Technologies,* the adoption of an innovative theory of recovery is better left to the state courts of Delaware or its legislature. *See, Bondi v. Citigroup, Inc.*, 2005 WL 975856 (N.J.Super.L. 2005).

15

It is clear that courts have drawn a distinction between the use of a deepening insolvency theory as an additional claim against individual corporate directors versus the assertion of the theory against non-directors.  This distinction flows from the fact that directors owe fiduciary duties to the corporation and, in the event of insolvency, to the creditors of the corporation, while non-directors are usually not fiduciaries.  The difficulty with the theory when raised against a director is often one of redundancy.  The difficulty with respect to the use of the theory against a non-director, is the absence of an identifiable duty, a requisite element of all torts.  Where the target defendant is a director who is alleged to have breached one or more fiduciary duties, a court should determine, based on the allegations of the complaint, whether a cause of action labeled "deepening insolvency" is no different than an ordinary one for breach of fiduciary duty.

The GOLDFARB INDIVIDUALS are alleged each to have been a director of the DEBTOR.  Under Delaware law, directors are fiduciaries who owe to the corporation the duties of honesty, loyalty, good faith, diligence and fairness, and who must act for the benefit of the corporation rather than in furtherance of their personal interest.  When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain.  *Weinberger v. UOP, Inc.,* 457 A.2d 701, 710 (Del.Supr. 1983).  There is no dilution of this obligation where one holds dual or multiple directorships.  *Id.*

The TRUSTEE has denominated the cause of action alleged in Count II as one for "deepening insolvency," as distinguished from that pleaded in Count I for "breach of fiduciary duty."  The allegations set forth in Count I may be summarized as a claim against

16

the directors for breach of the duty of loyalty.  The TRUSTEE alleges in Count I that (1) the GOLDFARB INDIVIDUALS, as directors, owed a duty of loyalty to the DEBTOR and its creditors while the DEBTOR was insolvent; (2) they breached that duty by taking action as directors of the DEBTOR that served their own interests or the interests of GOLDFARB; (3) the breach was the proximate cause to the DEBTOR and its creditors; (4) of substantial injury to the DEBTOR'S property in an amount to be determined at trial.

Count II incorporates by reference all of the allegations of Count I.  In addition, the TRUSTEE alleges in Count II that the GOLDFARB INDIVIDUALS, knowing that the DEBTOR was insolvent, prolonged the life of the DEBTOR so that transactions could be entered into for the benefit of GOLDFARB and the GOLDFARB INDIVIDUALS that deepened the DEBTOR'S insolvency.  Count II characterizes the actions of the GOLDFARB INDIVIDUALS as "intentional self-dealing," "dishonest and fraudulent," "wanton, wilful and malicious," and "in conscious and intentional disregard to the rights and best interests of the Debtor and its creditors."  Count II alleges that this conduct caused the DEBTOR'S "deepening insolvency and the decrease in the value of the Debtor's property and ultimately resulting in the Debtor's Chapter 11 filing and the reduction of the assets available to pay the Debtor's creditors."  Finally, Count II alleges that as a direct and proximate result of the alleged misconduct, the DEBTOR suffered substantial injury to the property of its estate in an amount to be determined at trial.

By incorporating all of the allegations of Count I into Count II, the TRUSTEE has muddied the waters, making it difficult to discern and identify the elements that comprise the common law claim asserted in Count II.  If the elements of a deepening insolvency

17

claim are identical to a breach of fiduciary claim, even if cast in slightly different terminology, dismissal of Count II would be appropriate since duplicative counts are properly dismissed. *See, Ferran v. Town of Nassau,* 11 F.3d 21 (2nd Cir. 1993); *In re Buckhead America Corp.,* 178 B.R. 956 (D.Del. 1994).

In their Motion to Dismiss, the GOLDFARB INDIVIDUALS assume for the purpose of the Motion the viability in Delaware of the tort of deepening insolvency.  They contend only that the TRUSTEE has failed to allege a necessary element of the claim, the fraudulent prolongation of the corporation's life beyond insolvency, relying on *In re Global Service Group, LLC,* 316 B.R. 451 (Bankr.S.D.N.Y. 2004).  The bankruptcy court in *Global Service,* applying New York law, dismissed a deepening insolvency count brought against individuals who were the senior management and principal members of the debtor limited liability company, reasoning as follows:

> Although subsequent allegations in the Complaint, discussed below, accuse the [Defendants] of self-dealing, the Complaint does not allege that the Insider Defendants prolonged Global's life to misappropriate the transfers they received. Rather, the First Cause of Action wrongly assumes that prolonging the life of an insolvent corporation that continues to incur debt, without more, states a claim for relief.

316 B.R. at 461.  Dismissing related claims against the same defendants based on the allegation that those individuals allowed Global to do business and incur indebtedness while insolvent, the court noted that the plaintiff trustee argued in his brief that the defendants continued to operate Global as a means of siphoning its funds for their individual benefit, concluding that if the complaint included this allegation, it might be legally sufficient. *Id* at 465.  If so, the prolongation of Global's operations would smack of self-dealing, constitute a breach of fiduciary duty, and open up recovery under the theory

18

of deepening insolvency. *Id.* The court granted the trustee leave to replead to allege a legally sufficient claim that the defendants "prolonged Global's existence so that they could continue to receive fraudulent transfers." *Id.* at 466.

Count II of the Amended Complaint alleges that the GOLDFARB INDIVIDUALS caused the DEBTOR to continue to operate and incur debt for the purpose of buying additional time to use the DEBTOR'S assets for their benefit and for the benefit of GOLDFARB, and that their intentional self-dealing and "fraudulent continuation of the Debtor's business" resulted in the "fraudulent prolonging of the life of the Debtor." In addition, the allegations of Paragraph 37, incorporated by reference into Count II, include allegations of fraudulent conveyances to or in favor of GOLDFARB. Taken together, these allegations satisfy the minimum pleading requirements set forth in *Global Service.* While *Global Service* is based on New York law, in light of the fact that the GOLDFARB INDIVIDUALS rely on it as authority and concede the viability of the tort of deepening insolvency in Delaware, the Court will follow its reasoning for the purpose of disposing of the Motion to Dismiss. Count II adequately alleges a valid cause of action and will survive the Motion.

This result is made easier since Count II states a traditional cause of action for a director's breach of fiduciary duty without regard to whether Delaware would embrace deepening insolvency as a new theory of director liability. The Court is of the view that the allegation that the misconduct proximately caused the DEBTOR'S insolvency to deepen, i.e., its already negative net worth to become more negative, may be read as nothing more than a description of damages.[14] *See, In re Parmalat,* — F.Supp.2d —, 2005 WL

---

[14] At this stage, the Court makes no determination whether the difference in how negative the DEBTOR'S net worth was before the director misconduct, compared to after, is a proper measure of damages.

1923839 (S.D.N.Y.) (declining to decide whether North Carolina recognizes a cause of action for "deepening insolvency" on a motion to dismiss, noting the injury to the corporation is compensable on a claim for breach of fiduciary duty).

The Court is far from convinced, however, that Delaware will ultimately adopt the deepening insolvency theory as an independent cause of action separate from the garden variety breach of fiduciary duty claim, to the extent that the target defendant is a corporate director.  A director's fiduciary duties already prohibit the kind of conduct that forms the basis for deepening insolvency claims.  The open question is whether the damages recoverable under deepening insolvency will differ from those recoverable for breach of fiduciary duty.  If so, then perhaps separate cause of action status is warranted.  The question of damages is not before the Court at this juncture and that issue remains for another day.

The other difference that distinguishes Count II from Count I is the allegations of a heightened state of mind.  In addition to the allegation that the directors acted fraudulently, they are also alleged to have acted in a "wanton, wilful and malicious manner" and with a "conscious and intentional disregard" for their duties.  The Court is aware of no authority that holds or suggests that a particular state of mind is a requisite element of a cause of action for deepening insolvency.  Neither is the Court aware of any authority that proof of such a state of mind entitles a plaintiff to additional damages or a different remedy than for a similar breach of fiduciary duty committed less evil-mindedly.[15]  As this litigation proceeds, it will be incumbent upon the TRUSTEE to explain the significance of these allegations.

---

[15] As previously noted, however, an exculpatory clause in a corporate charter does not release a director from liability for intentional misconduct.  *See* n.13, *supra.*

Because of the uncertainty surrounding the theory of deepening insolvency, and the manner in which it has been pleaded by the TRUSTEE, the Court is of the opinion that it is better to leave Count II pending with these issues to be clarified or resolved later in the case.  If it turns out that Count II is subsumed within Count I, the GOLDFARB INDIVIDUALS will have suffered no prejudice because of the deferral of that determination.

**Preferential and Fraudulent Transfers**

**Count V**

Count V of the Amended Complaint alleges that the DEBTOR (1) agreed to transfer to GOLDFARB 3.5% of the proceeds from the sale of the DEBTOR'S assets, (2) agreed to release GOLDFARB from a pre-existing obligation to pay it $735,000, and (3) paid GOLD-FARB $33,269.  These three transactions are alleged to be preferential transfers avoidable under Section 547(b).

Only the third transaction is alleged to have occurred within 90 days of the filing. The first two are alleged to have occurred more than 90 days but less than one year before bankruptcy; they are properly supported by an allegation that GOLDFARB was an insider. Apart from the timing of the transfers, the TRUSTEE properly alleges each element of a preferential transfer set forth in Section 547(b).  The three transfers bear little similarity and call for separate analysis.  The Court will first address the TRUSTEE'S claim that the agreement to transfer a portion of the sale proceeds is a preferential transfer.

The purpose of the FIFTH AMENDMENT as set forth in Recital B, was to facilitate a sale of the DEBTOR entities or their assets, identified as Fleming Packaging Corporation,

fp Label Company, Inc., and fp Estate Incorporated. The same Recital acknowledges GOLDFARB'S willingness to "relinquish control" of those entities during the sale process to "assure the thoroughness and fairness" of that process.

Paragraph 2.2 of the FIFTH AMENDMENT provides, in relevant part, as follows:

> If the Company and the Guarantors are sold pursuant to the sale program described in Recital B and the Net Sale Proceeds exceed $8,000,000 in the aggregate, the Lenders agree to deliver to Goldfarb Corporation from the proceeds of sale of the Company and the Guarantors received by the Agent (payable immediately following the date on which the last of the Net Cash Proceeds of sale of the Company and the Guarantors pursuant to such sale program are received by the Agent) 3.5% of the Net Sale Proceeds.

Following the bankruptcy filing, the DEBTOR'S assets were sold pursuant to Section 363(b), upon notice to all creditors, and with the consent of BANK ONE, the holder of a first priority lien on those assets. The sale proceeds were insufficient to pay the full amount owed to BANK ONE. It is a matter of record in the bankruptcy cases that the portion of the sale proceeds paid to GOLDFARB were funds subject to BANK ONE'S liens that were paid by agreement of BANK ONE. Had the sale price exceeded the balance due BANK ONE, the excess proceeds would have been paid to the DEBTOR to be administered as part of the bankruptcy estate.

GOLDFARB argues that Count V fails to allege the transfer of an interest of the DEBTOR in property, relying primarily on *In re SPM Mfg. Corp.,* 984 F.2d 1305 (1st Cir. 1993), for the proposition that a transaction where an undersecured creditor who agrees to allow a portion of the proceeds from sale of the debtor's assets which are its collateral to be paid to a third party does not constitute an avoidable transfer since the debtor's estate had no entitlement to the transferred funds. The TRUSTEE urges the Court not to follow

22

*SPM,* contending that a transfer of a fully encumbered asset (or the proceeds thereof) is

nevertheless a transfer of an interest of a debtor's property for purposes of Section 547(b).

Discrediting the applicability of *SPM* because it does not involve the avoidance of

a fraudulent or preferential transfer, the TRUSTEE submits that *Warsco v. Preferred Technical

Group*, 258 F.3d 557 (7th Cir. 2001), is controlling.  In *Warsco*, the purchaser of the debtor's

assets, in a separate but conditional transaction, made a payment of $500,000 to a creditor

for a promissory note on which the debtor was obligated.  In opposition to the Chapter 7

trustee's attempt to recover the payment as a preferential transfer, the creditor argued that

the payment it received from the purchaser was not a transfer of an interest of the debtor

in property.  Recognizing that a preferential transfer need not be made directly by the

debtor, the court noted that an indirect transfer made to a creditor by a third party on

behalf of the debtor may be subject to avoidance.  In determining whether a transfer made

by a purchaser to one of the debtor's creditors in the context of an asset sale is a transfer

subject to avoidance, the court identified the fundamental issue as whether the funds used

to make the payment were part of the purchase price for the debtor's assets.  In making

that determination, the court looked for a "fairly direct, traceable link between the

consideration given for the debtor's assets and the funds used to pay the creditor."  After

considering all facets of the "complex" transaction, the court reversed the district court's

grant of summary judgment in the purchaser's favor, determining that the trustee was not

afforded the benefit of all inferences that could be drawn from the unanswered questions

in the record.

23

The TRUSTEE draws an analogy between this case and *Warsco*, but it is a difficult one to follow. *Warsco* involved a $500,000 transfer to an unsecured creditor by the buyer of the debtor's assets. Here, the challenged transfer was made by an undersecured creditor from the proceeds of its collateral. In *Warsco,* the $500,000, to the extent it was consideration for the debtor's assets, would have gone to the debtor but for the transfer. Here, the 3.5% would not have gone to the DEBTOR but would have been retained by BANK ONE. Like the agreement in *SPM*, the FIFTH AMENDMENT provides that GOLDFARB would only receive a share of the funds actually paid to BANK ONE.

In light of how the sale of the DEBTOR'S assets turned out, netting less than needed to pay off BANK ONE, the Court is persuaded that the reasoning of *SPM* is applicable here and leads to the correct result. Involved in a liquidating Chapter 11, the debtor also had one major creditor, Citizens Savings Bank (Citizens), that held a lien on all of the debtor's assets securing a $9 million claim. Acknowledging that Citizens was undersecured, the unsecured creditors committee cut a deal with Citizens for a share of the proceeds from the sale of the debtor's assets, to be paid to the unsecured creditors to the exclusion of the IRS and insiders.

After the debtor's assets were sold for $5 million, the case converted to Chapter 7. Refusing to enforce the proceeds sharing agreement as contrary to the Code's priority scheme, the bankruptcy court instead ordered Citizens to pay to the Chapter 7 trustee the portion of the proceeds from the sale of its collateral that it had agreed to pay to the unsecured creditors committee.

24

Reversing the lower courts and holding that the bankruptcy court exceeded its authority by ordering payment to the trustee, the 1st Circuit relied on the fact that the entire $5 million belonged to Citizens so that the bankruptcy estate had no claim to any portion of those funds. The court concluded that the proceeds-sharing agreement did not violate the distribution scheme of Section 726 or the priorities of Section 507. Rejecting the argument that the agreement violates the spirit of the Code's distribution scheme, the court recognized that while the debtor and the trustee are not allowed to pay nonpriority creditors ahead of priority creditors, secured creditors are free to do whatever they wish with the proceeds from their collateral, including sharing those proceeds with other creditors. 984 F.2d at 1313. The court concluded that since a secured creditor is free to share its proceeds with other creditors or third parties of its choosing, it could not be improper to enter into a contract to do so. *Id.* at 1313-14.[16]

Although *SPM* is not a preference case, what was at stake there is the same as in the case at bar. In both cases, the issue is whether the Chapter 7 trustee will be allowed to obtain for the benefit of the estate, funds that constitute the proceeds of a secured creditor's collateral that the creditor voluntarily agreed to transfer to a third party. Though the recovery mechanisms are different, the principle that puts the funds beyond the trustee's reach is identical – a secured creditor is free to dispose of its proceeds without regard to the distribution rules in bankruptcy. That principle constitutes a roadblock to any avenue by which a trustee might seek recovery.

---

[16] As alternative support for its ruling, the 1st Circuit suggested that the proceeds-sharing agreement could be viewed as a routine, innocuous agreement for the sale and purchase of claims in bankruptcy, i.e., a claims trading agreement. However, the court declined to decide whether the agreement itself constituted a "transfer." 984 F.2d at 1314, n.10.

A secured creditor's agreement to transfer its collateral is not a preference because the estate is not depleted.[17]  Although the DEBTOR by executing the FIFTH AMENDMENT may have consented to or even facilitated the transfer, it was nonetheless a transfer, ultimately, of BANK ONE'S collateral.  There is no set of facts that the TRUSTEE could prove that would permit recovery of the 3.5% proceeds payment to GOLDFARB as a preferential transfer under Section 547(b).  This claim is properly dismissed.[18]

The TRUSTEE also alleges in Count V that the release of GOLDFARB'S obligation to fund the remaining $735,000 under the Letter Agreement is avoidable as a preferential transfer.  Pointing out that the DEBTOR was not a signatory to the Letter Agreement, GOLDFARB contends that BANK ONE'S agreement not to enforce GOLDFARB'S remaining obligation had no effect upon the DEBTOR.  GOLDFARB'S characterization of the Letter Agreement as a private agreement which had no effect upon the DEBTOR is disingenuous, at best.  The Letter Agreement was executed in conjunction with the "Third Amendment" to the Loan Agreement, and in fact was relied on by BANK ONE in renegotiating the loan with the DEBTOR.  Moreover, the TRUSTEE, in response to GOLDFARB'S position, has asserted  that the DEBTOR was a third-party beneficiary of the Letter Agreement.  There can be little doubt that the Letter Agreement was entered into for the DEBTOR'S direct benefit.  Neither is there any doubt that as a third-party beneficiary, the DEBTOR could enforce the promise directly and the right to obtain the funds from the

---

[17] Although diminution of the debtor's estate is not an element expressed in Section 547(b), the Seventh Circuit continues to uphold its consideration as an implied factor.  *See, Warsco,* 258 F.3d at 565, n.11.

[18] It is also doubtful that the execution of the FIFTH AMENDMENT constitutes a "transfer" of the DEBTOR'S property for purposes of Section 547(b).  In this case, the transfer is better determined to have occurred postpetition when the assets were sold and the proceeds distributed.  That transfer was approved by the Court and is not avoidable under Section 549.

promisor, GOLDFARB, is property of the DEBTOR, prepetition, and of the estate, postpetition. *See, National Tax Credit Partners, L.P. v. Havlik,* 20 F.3d 705 (7th Cir. 1994); *Altevogt v. Brinkoetter,* 85 Ill.2d 44, 52-55, 421 N.E.2d 182, 51 Ill.Dec. 674 (Ill. 1981).

Although GOLDFARB argues that the FIFTH AMENDMENT embodies only BANK ONE'S agreement not to enforce the payment obligation, the DEBTOR is a party to that contract and, thus, bound by its terms. The FIFTH AMENDMENT supports the TRUSTEE'S allegation that it constitutes a release by the DEBTOR of GOLDFARB'S obligation to pay the remaining $735,000. The additional allegation that the release was made on account of an antecedent debt owed by the DEBTOR to GOLDFARB is sufficient to bring the transaction within the ambit of Section 547(b).

GOLDFARB contends that BANK ONE and GOLDFARB, the parties to the Letter Agreement, were free to modify it, without the consent of the third-party beneficiary, at any time. This argument is beside the point. Drawing all inferences in favor of the TRUSTEE, the allegations concerning the Letter Agreement can be construed to state a cause of action where the DEBTOR released GOLDFARB from its obligation to pay the DEBTOR $735,000. A release is a transfer of an interest of the debtor in property and is subject to avoidance as a preferential or fraudulent transfer. *In re e2 Communications, Inc.,* 320 B.R. 849 (Bankr.N.D.Tex. 2004). The TRUSTEE relies on the fact that the DEBTOR executed the FIFTH AMENDMENT, thereby releasing GOLDFARB from its payment obligation. The fact that BANK ONE also signed it is not pertinent to the question of whether the DEBTOR released a claim against GOLDFARB. The allegations of the

Amended Complaint and the terms of the FIFTH AMENDMENT adequately allege a

transfer of an interest of the DEBTOR in property.

Alternatively, the Amended Complaint also sufficiently alleges an indirect transfer

under the doctrine espoused in *Warsco,* that an indirect transfer made by a third party to

a creditor of the debtor may also be avoidable.   GOLDFARB argues that the FIFTH

AMENDMENT was nothing more than an independent agreement between BANK ONE

and GOLDFARB that had no effect on the DEBTOR'S rights even though it included an

agreement by BANK ONE not to enforce GOLDFARB'S obligation to pay the DEBTOR an

additional $735,000.   Even accepting this facially nonsensical argument, the FIFTH

AMENDMENT *at least* constitutes a release by BANK ONE (the promisee) of the payment

obligation of GOLDFARB (the promisor) that deprived the DEBTOR (the third-party

beneficiary) of a large cash infusion.   Since the promise was arguably enforceable by the

DEBTOR as the third-party beneficiary, the release by BANK ONE was an indirect transfer

of an interest of the DEBTOR in property.   An avoidable indirect transfer has also been

adequately alleged.

This conclusion is even clearer when one considers that had the FIFTH

AMENDMENT not mentioned the Letter Agreement obligation, the right to compel

enforcement of GOLDFARB'S obligation to pay the additional $735,000 would have

become an asset of the bankruptcy estate upon the DEBTOR'S filing.   *See, Warsco,* at 564

(property of the debtor subject to the preferential transfer provision is best understood as

that property that would have been part of the estate had it not been transferred before the

commencement of the bankruptcy proceedings).   Whether direct or indirect, the FIFTH

AMENDMENT operated to the benefit of GOLDFARB and to the detriment of the DEBTOR to the tune of $735,000.

The third and final transfer that the TRUSTEE claims is preferential is the payment of $33,269 to GOLDFARB by the DEBTOR on February 25, 2003, which GOLDFARB contends was a transfer made in the ordinary course of business. The allegation of a defense under Section 547(c), however, is not a basis for dismissal of a complaint that adequately alleges the elements of Section 547(b), which Count V does with respect to that payment. Dismissal will be denied.

**Count VI**

In Count VI of the Amended Complaint, plead in the alternative, the TRUSTEE alleges that the same three transfers characterized as preferences in Count V are avoidable as fraudulent transfers under Section 548. Rather than being made on account of an antecedent debt as alleged in Count V, the TRUSTEE alleges in Count VI that the DEBTOR received less than reasonably equivalent value in exchange for each transfer. The reasoning and result of the foregoing discussion under Count V applies equally to Count VI.

The transfer to GOLDFARB of 3.5% of the proceeds from the sale of the DEBTOR'S assets cannot be avoidable as a fraudulent transfer for the same reasons that it cannot be avoidable as a preference. The Motion to Dismiss Count VI will be granted to that extent only. Count VI adequately states a claim for relief under Section 548 as to the release of the obligation to pay the $735,000 and as to the payment of $33,269. The Motion will be denied with respect to those two transfers.

**Count VII**

In Count VII (mistakenly labeled Count V) of the Amended Complaint, the TRUSTEE, again pleading in the alternative, alleges that the same three transfers are avoidable pursuant to Section 544(b)(1) of the Bankruptcy Code and the Illinois Fraudulent Transfer Act, 740 ILCS 160/5. The parties raise the same issues with respect to Count VII as previously addressed with respect to Counts V and VI, with similar result. The Motion to Dismiss Count VII will be granted as to the 3.5% transfer and denied as to the release and the check. The GOLDFARB DEFENDANTS will be given twenty-one (21) days to answer the Amended Complaint.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###