**SIGNED THIS: September 08, 2006**

_____
**THOMAS L. PERKINS**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE:<br>FLEMING PACKAGING CORPORATION,<br>a Delaware corporation,<br>    Debtor.<br>_____ | )<br>)<br>)<br>)<br>)<br>) | No. 03-82408 |
| GARY T. RAFOOL, Chapter 7 Trustee, on behalf<br>of the Estate of Fleming Packaging Corp.,<br>    Plaintiff,<br><br>vs.<br><br>THE GOLDFARB CORPORATION, a Canadian<br>corporation, MARTIN GOLDFARB, STANLEY<br>GOLDFARB, ALONNA GOLDFARB, GEORGE<br>GIALENIOS and JOE ANDERSEN, individually<br>and as former directors and/or officers of Fleming<br>Packaging Corp.,<br>    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adv. No.  04-8166 |
| GEORGE GIALENIOS and JOSEPH ANDERSEN,<br>Cross-Plaintiffs,<br><br>vs.<br><br>THE GOLDFARB CORPORATION, a Canadian<br>corporation, MARTIN GOLDFARB, STANLEY | )<br>)<br>)<br>)<br>)<br>)<br>) | |

**GOLDFARB and ALONNA GOLDFARB,**    )
**Cross-Defendants.**    )
    )

# O P I N I O N

This matter is before the Court on Plaintiff's Motion to Strike and Dismiss Certain Affirmative Defenses raised by The Goldfarb Corporation (GOLDFARB), Stanley Goldfarb, Martin Goldfarb and Alonna Goldfarb.  Stanley, Martin and Alonna will be collectively referred to as the "GOLDFARB INDIVIDUALS" and the GOLDFARB INDIVIDUALS and GOLDFARB (the corporation) will be collectively referred to as the "GOLDFARB DEFENDANTS".  Of the twenty-seven affirmative defenses included in the GOLDFARB DEFENDANTS' Answer to the First Amended and Restated Adversary Complaint (the "Amended Complaint"), the Plaintiff, Gary T. Rafool (TRUSTEE), moves to strike twenty-one.[1]

The six affirmative defenses not sought to be stricken are as follows: #3, #10, #11, #17, #23 and #24.   In their Response to the Motion to Strike, the GOLDFARB DEFENDANTS confess the motion as to Defenses #9 and #25, which shall be stricken.  In his reply, the TRUSTEE moves to withdraw the motion to strike Defenses #1 and #2.  The withdrawal request is premised on the TRUSTEE'S apparent belief that Count I states a claim for breach of the duty of care.  As will be explained in more detail, the Court has determined that the TRUSTEE has not properly alleged a duty of care claim.  Therefore, his motion to withdraw the motion to strike affirmative Defenses #1 and #2 is denied.

---

[1] The claims asserted against the GOLDFARB DEFENDANTS in the Amended Complaint are summarized as: Count I for breach of fiduciary duty against the GOLDFARB INDIVIDUALS; Count II for deepening insolvency against the GOLDFARB INDIVIDUALS; Count V for recovery of preferential transfers against GOLDFARB; Count VI for recovery of fraudulent transfers under the Bankruptcy Code against GOLDFARB; and Count VII for recovery of fraudulent transfers under state law against GOLDFARB.

The Court is also aware of *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.,* --- A.2d ----, 2006 WL 2434228 (Del.Ch. 2006), an opinion issued by the Court of Chancery of Delaware on August 10, 2006, holding, among other things, that Delaware does not recognize a cause of action for deepening insolvency. Count II of the Amended Complaint alleges such a claim under Delaware law. The impact of the *Trenwick* opinion on Count II is not properly addressed on a motion to strike affirmative defenses and is left for future consideration upon proper motion. This Opinion assumes the continuing pendency of Count II.

## General Principles for Striking Defenses

Under Rule 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The analytical framework for addressing a motion to strike affirmative defenses was set forth by the District Court for the Northern District of Illinois, as follows:

> As a rule, courts disfavor motions to strike because they may serve only to cause delay. *Renalds v. S.R.G. Restaurant Group,* 119 F.Supp.2d 800, 801 (N.D.Ill.2000) (Alesia, J.). However, where motions to strike "remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Affirmative defenses are pleadings, and thus must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "An allegation must include either direct or inferential allegations respecting all material elements of the claim asserted." *MAN Roland v. Quantum Color Corp.,* 57 F.Supp.2d 576, 579 (N.D.Ill.1999) (Alesia, J.). Affirmative defenses that are simply "bare bones conclusory allegations" do not meet this standard and must be stricken. *Heller*, 883 F.2d at 1295.

> A three-part test determines the fate of an affirmative defense subject to a motion to strike. (1) The matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Rules 8 and 9; and (3) the matter must withstand a Rule

12(b)(6) challenge - that is, if the defendant could prove no set of facts in support of the affirmative defense that would defeat the complaint, the defense must be stricken as legally inadequate. *Renalds*, 119 F.Supp.2d at 802-03.

*Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.,* 213 F.R.D. 307 (N.D.Ill. 2003).

Given that it may be difficult to determine whether a particular matter should be plead as an affirmative defense, the pleader is usually given the benefit of the doubt. *Franklin Capital Corp. v. Baker & Taylor Entertainment, Inc.,* 2000 WL 1222043, at *1 (N.D. Ill. 2000). In addition, some matters that are defensive in nature, but are not true affirmative defenses, are nevertheless properly pleaded under Rule 8(b). *Id.* A true affirmative defense raises matters outside the scope of plaintiff's *prima facie* case. *Id.* As a general rule, the party raising an affirmative defense has the burden of proof on the issue. *Brunswick Bank & Trust Co. v. U.S.,* 707 F.2d 1355, 1360 (Fed.Cir. 1983). Generally, however, a defense that only serves to negate an element of the plaintiff's case does not trigger a shift in the burden of proof. Therefore, it is important to determine and identify those matters that are true affirmative defenses in order to give guidance to the parties.

## Business Judgment Rule

Because the GOLDFARB DEFENDANTS characterize five of the affirmative defenses as embodying or emanating from the business judgment rule, a brief review of the purpose and functional application of that rule will be helpful. The business judgment rule is a common law standard of judicial review designed to protect the wide latitude conferred on a board of directors in handling the affairs of the corporation. *Omnicare, Inc. v. NCS Healthcare, Inc.,* 818 A.2d 914, 927 (Del.Supr. 2003). The rule operates as both a procedural guide for litigants and a substantive rule of law. Under Delaware law, the rule

4

establishes a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company. *In re Walt Disney Co. Derivative Litigation,* --- A.2d ----, 2006 WL 1562466 (Del.Supr. 2006). The presumption initially attaches to a director-approved transaction within a board's conferred or apparent authority in the absence of any evidence of fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment. *Grobow v. Perot,* 539 A.2d 180, 187 (Del.Supr. 1988).

The Delaware Supreme Court has described the operation of the business judgment rule as follows:

> The rule posits a powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be "attributed to any rational business purpose." Thus, a shareholder plaintiff challenging a board decision has the burden at the outset to rebut the rule's presumption. To rebut the rule, a shareholder plaintiff assumes the burden of providing evidence that directors, in reaching their challenged decision, breached any one of the triads of their fiduciary duty - good faith, loyalty or due care. If a shareholder plaintiff fails to meet this evidentiary burden, the business judgment rule attaches to protect corporate officers and directors and the decisions they make, and our courts will not second-guess these business judgments. If the rule is rebutted, the burden shifts to the defendant directors, the proponents of the challenged transaction, to prove to the trier of fact the "entire fairness" of the transaction to the shareholder plaintiff.
>
> Under the entire fairness standard of judicial review, the defendant directors must establish to the court's satisfaction that the transaction was the product of both fair dealing and fair price. Further, in the review of a transaction involving a sale of a company, the directors have the burden of establishing that the price offered was the highest value reasonably available under the circumstances. (Citations omitted).

*Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 361 (Del.Supr. 1993).

It is important to emphasize the distinction in how the rule operates depending upon which of the three primary fiduciary duties is alleged to have been breached. The

business judgment rule as a defense to liability is applicable to a claim alleging that a director breached the duty of care, in which event the rule serves to preclude judicial review of the substantive merits of the decision.  *Brehm v. Eisner,* 746 A.2d 244, 264 (Del.Supr. 2000); *see, generally,* Stephen M. Bainbridge, *The Business Judgment Rule as Abstention Doctrine,* 57 Vand. L. Rev. 83 (2004).   The business judgment rule shields directors from liability for good faith business decisions, even those that turn out to be mistaken. *Strassburger v. Early,* 752 A.2d 557, 582 (Del.Ch. 2000).  Mistakes of judgment that may be characterized as ordinary negligence will not give rise to liability due to the protection of the business judgment rule.  *Joy v. North,* 692 F.2d 880, 885 (2nd Cir. 1982).  It is the essence of the business judgment rule that a court will not apply 20/20 hindsight to second guess a board's decision except in rare cases where a transaction may be so egregious on its face that the board approval cannot meet the test of business judgment. *Brehm v. Eisner,* 746 A.2d at 260.  This egregiousness must ordinarily be manifested in a grossly negligent decisionmaking process – usually a failure to include consideration of all material information reasonably available.  *Id.* at 259.

In order to state a claim against directors for breach of the fiduciary duty of care that is not precluded by the business judgment rule, the complaint must set forth factual allegations that support that a board's decision was uniformed or grossly negligent. *Trenwick, supra.*  Where a corporation has adopted the exculpatory provision permitted by 8 Del.C. § 102(b)(7), however, a claim premised solely on breach of the duty of due care is precluded.  *Emerald Partners v. Berlin,* 787 A.2d 85, 91-92 (Del.Supr. 2001).  As that statute only applies to directors, however, it does not shield officers who are also directors from

breach of duty of care claims arising from their actions taken as officers. *In re Century Electronics Mfg., Inc.,* 345 B.R. 33 (Bankr.D.Mass. 2006).

The protection against judicial review of the substantive merits of a board decision afforded by the business judgment rule does not apply where the plaintiff has made an adequate showing that the directors breached their duty of loyalty or good faith by having committed fraud, corporate waste, engaged in self-dealing, made decisions affected by a conflict of interest, acted in bad faith or with a corrupt motive, or breached the duty of due care by having reached their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available. *Brehm v. Eisner,* 746 A.2d at 264, n.66; William Meade Fletcher, 3A *Fletcher Cyclopedia of the Law of Private Corporations,* §1040. In effect, the business judgment rule is not a "defense" to claims based on any of those allegations.

As a standard of judicial review, the business judgment rule is not a true affirmative defense. As a substantive rule of law, it does not have to be pleaded to be operative. When faced with a claim of director or officer liability, a court must apply the applicable business judgment rule even if not raised by any party. Nonetheless, the rule is defensive in nature and pleading it certainly allows the parties and the court to more clearly define the issues and assign the burden of proof.

One more general point about the business judgment rule needs to be addressed. The Amended Complaint alleges that the GOLDFARB INDIVIDUALS were both directors and officers of Fleming Packaging Corporation (FLEMING) during the time period in question. In asserting several breaches of fiduciary duties, the Amended Complaint refers

to decisions made or actions taken by them without identifying whether they were acting in their capacity as directors or officers.

On the issue of whether and how the business judgment rule applies to the actions of an officer *qua* officer, Delaware law is surprisingly undeveloped. Although the Delaware Supreme Court routinely states that the business judgment rule covers officers as well as directors when it recites the rule in actions involving only directors, the court has never held that the rule applies to officers acting in that capacity. Lyman P.Q. Johnson, *Corporate Officers and the Business Judgment Rule,* 60 Bus. Law. 439 (2005) (arguing, generally, that the business judgment rule should be applied more narrowly to officers than to directors). Despite the obvious importance of officers in corporate governance, the standard of liability for nondirector officers remains relatively unexplored in the case law. Lawrence A. Hamermesh and A. Gilchrist Sparks, III, *Corporate Officers and the Business Judgment Rule: A Reply to Professor Johnson,* 60 Bus. Law. 865 (2005) (arguing that the business judgment rule should offer the same protection against claims of ordinary negligence of corporate officers as it provides to directors).

Because the Delaware courts, when applying the business judgment rule, have repeatedly lumped officers and directors together, without distinction, albeit in *dicta,* and have never stated that the rule should be applied differently to officers, the Court presumes for the purpose of this Opinion, that Delaware would apply the business judgment rule identically as to both officers and directors. The parties have the option to argue for a contrary application in the future.

It is also worth noting that a director "acts" as a director through official board action, whether by full board vote or authorized board committee action. An officer acts

within the scope of authority conferred by the office, as an agent of the company.  Director

conduct and officer conduct are usually mutually exclusive and easily distinguishable.

When evidence is presented, it should be readily apparent whether one's conduct is as an

officer or a director simply by whether or not the action occurred by vote of the board or

committee of the board.

**<u>Affirmative Defenses #2, #8, #12, #13 and #26</u>**

_____The GOLDFARB INDIVIDUALS assert that affirmative Defenses #2, #8, #12, #13

and #26 raise "various aspects" of the business judgment rule in defense of the claims

alleged in Counts I and II of the Amended Complaint.  In order to determine whether these

defenses are valid, it is necessary to ascertain the exact nature of the causes of action.

Count I, entitled "Breach of Fiduciary Duty (Delaware State Law)" is asserted against the

GOLDFARB INDIVIDUALS as officers and directors of FLEMING.  Count I is premised

on six events:

1. The rejection of an offer to buy the company;

2. The release of GOLDFARB from its guaranty of a $300,000 stay bonus due Codefendant Gialenios;

3. The release of GOLDFARB from its agreement to loan FLEMING $735,000;

4. An agreement to transfer to GOLDFARB 3.5% of the net proceeds from the sale of the assets of FLEMING;

5. The transfer to GOLDFARB of $33,269; and

6. Holding secret meetings and entering into undisclosed transactions in an effort to hide information from FLEMING'S other directors, officers and employees.

It is alleged that all of these activities were wrongful in that the GOLDFARB INDIVIDUALS put their own personal interests and the interests of GOLDFARB ahead of those to whom fiduciary duties were owed: FLEMING and its creditors. Count I is limited to claims of intentional misconduct that are properly categorized as breaches of either or both of the duties of loyalty and good faith. No breach of the duty of care is alleged.[2]

Count II, like Count I, is not specific as to whether the actions taken by the GOLDFARB INDIVIDUALS were in their capacity as directors or officers. Count II sets out general allegations that after FLEMING became insolvent, the GOLDFARB INDIVIDUALS caused FLEMING to incur additional debt that deepened its insolvency and fraudulently prolonged FLEMING'S existence. As this Court has previously recognized, it is an open question whether Delaware will recognize a separate cause of action for deepening insolvency.[3] If so, it will almost certainly include as one of its elements a breach of one of the fiduciary duties. In that event, it is likely that the business judgment rule will apply in the same manner as to traditional actions for such breaches - meaning that the rule's value as a defense will be limited solely to preclude judicial review of the substantive merits of decisions made or actions taken in good faith and with the requisite loyalty to the company.

---

[2]Specifically, no allegation is made of any conduct or decision that was lacking in due care or that was negligent. There is no allegation that any decision making process was uninformed or otherwise deficient. Rather, each allegation of an actionable decision, act or omission is phrased as one involving intentional misconduct engaged in for an improper purpose or motive. As such, the allegations of Count I fall outside the scope of a claim for breach of the duty of care, which presumes the presence of good faith and undivided loyalty.

[3]Only the Delaware Supreme Court may speak definitively on this issue. As noted previously, the *Trenwick* decision issues from the Court of Chancery.

**Defense #2**

_____Defense #2 reads as follows:

The business judgment rule shields the Individual Goldfarb Defendants from liability for any alleged breach of their fiduciary duty because all of their actions and decisions were undertaken on an informed basis with the honest belief that they were in the best interests of Fleming, for a rational business purpose, and that any such actions and decisions did not constitute corporate waste.  All of the complained of actions and decisions undertaken by Fleming's Board of Directors, including, without limitation, the Individual Goldfarb Defendants, were entirely fair to Fleming.

In evaluating whether a pleaded defense is truly a valid affirmative defense, the court must presume that the plaintiff is able to prove a *prima facie* case and that the defendant is able to prove the facts that constitute the defense.  Under that scenario, if the defendant would prevail, the defense is valid.  If the plaintiff would prevail, the defense is not valid.

Defense #2 is a general characterization of the business judgment rule as a defense to liability and, separately, a reference to the element of the rule that shifts the burden to the defendant to prove the "entire fairness" of the questioned transaction once the plaintiff has proved a breach of a fiduciary duty.  The shield against liability referred to in the first sentence of the defense arises only as to a claim for breach of the duty of care, a claim that is not alleged in Count I or II.  The business judgment rule's liability shield does not apply to claims for breach of the duty of loyalty or good faith.

The GOLDFARB INDIVIDUALS' concerns that some of the allegations could be construed as a breach of the duty of care are not shared by the Court.  In the Court's opinion, the TRUSTEE clearly alleges only intentional misconduct in Counts I and II.  If the

TRUSTEE wishes to assert a claim based on negligence, as to either the substance of any action or decision or the process leading up to any action or decision, a motion for leave to amend the complaint will be required. Because the TRUSTEE will not be permitted to prosecute a claim for breach of the duty of care on the Amended Complaint, and the first sentence of Defense #2 is not an affirmative defense to the claims for breach of the duty of loyalty and good faith, that sentence does not state a valid defense and shall be stricken.[4]

The second sentence correctly recites, under Delaware law, what the GOLDFARB INDIVIDUALS must prove if the claims alleged in Counts I and II are proved by the TRUSTEE by a preponderance of the evidence. The second sentence will stand as a valid affirmative defense.

### Defense #8

Defense #8 states in full: "The Individual Goldfarb Defendants' actions and decisions were at all times reasonable." Assuming Counts I and II were proved, would the GOLDFARB INDIVIDUALS prevail by proving their conduct was "reasonable"? The answer is no. If Counts I and II are proved, in order to prevail, the GOLDFARB INDIVIDUALS must prove that the questioned transaction was "entirely fair." This burden is properly alleged in Defense #2. Reasonableness, material to a negligence claim, is not the proper standard and Defense #8 shall be stricken.

---

[4]The Court views it as important to emphasize that the TRUSTEE is not pursuing a claim for breach of the duty of care, only for breach of the duties of loyalty and good faith. Striking the first sentence of Defense #2, however, will not impact the application of the business judgment rule, which is a substantive rule of law and standard of judicial review which must be applied in accordance with Delaware law. Pleading the rule is unnecessary and the manner in which it is pleaded is irrelevant. Ultimately, the business judgment rule must be applied as the Delaware courts apply it, not as the parties to this adversary proceeding happen to characterize it.

## Defense #12

_____Defense #12 states as follows:

1. The Fleming Board of Directors acted at all times in the best interests of Fleming.

2. At no time did any of the Fleming Board of Directors take their personal interests over the interests of Fleming or, when and if applicable, its creditors.

This is merely a restatement of the same concepts stated in the first sentence of Defense #2

and shall be stricken for the same reasons.

## Defense #13

_____Defense #13 is as follows:

1. The Fleming Board of Directors negotiated the terms, conditions, and provisions of the Fifth Amendment in an adversarial and arms-length manner.

2. At no time did any of the Fleming Board of Directors negotiate a benefit to themselves at the expense of Fleming, or when and if applicable, its creditors.

This defense serves only to negate elements of the TRUSTEE'S case in chief.  As such it is

not an affirmative defense and should be stricken.

## Defense #26

Defense #26 reads as follows:

1. The Board of Directors for Fleming, including, without limitation, the Individual Goldfarb Defendants, exercised their judgment in an informed, good faith effort to maximize the corporation's long-term wealth creating capacity.

2. Consequently, the Fleming Board of Directors, including, without limitation, the Individual Goldfarb Defendants, did not breach their duty of loyalty or care to Fleming, or when and if applicable, Fleming's creditors.

3.  As such, Plaintiff's claims in Counts I and II of its Complaint fail and must
be dismissed.

This defense is nothing more than a declaration of an alternative, innocent motive in

response to and for the purpose of negating the Amended Complaint's allegation of a

corrupt motive.   The GOLDFARB INDIVIDUALS have no burden to prove that this

particular innocent motivation, or any other particular one, spurred their actions.   They

will prevail if the TRUSTEE fails to prove a corrupt motive amounting to disloyalty or bad

faith.   In the Court's view, allowing Defense #26 to stand as pleaded would only serve to

cloud the real issues and possibly to confuse the parties as to the burden of proof.   Once the

TRUSTEE proves his *prima facie* case, the GOLDFARB INDIVIDUALS have the burden to

prove that the challenged transactions were entirely fair to FLEMING and its creditors.

Defense #26 shall be stricken.

It may also be helpful to clarify that the striking of these defenses does not render

related evidence irrelevant and will not affect the admissibility of evidence at trial.   For

example, the state of mind and motivations of the GOLDFARB INDIVIDUALS with respect

to the questioned decisions and actions are relevant, indeed critical, to the pending claims.

Notwithstanding the striking of the foregoing defenses, the Court fully expects to hear

detailed evidence of the reasoning and motivation behind those decisions and actions.

## Affirmative Defense #1

Defense #1 raises the affirmative defense provided by 8 Del.C. § 102(b)(7) which

permits a provision to be included in a Certificate of Incorporation that eliminates the

personal liability of a director to the corporation or its stockholders for breach of a

fiduciary duty.   That provision, however, expressly states that the limitation on liability has

14

no effect on a director's liability for a breach of the duty of loyalty, for bad faith, for intentional misconduct, or for any transaction where the director derived an improper personal benefit.  It is clear that as to the triad of fiduciary duties, care, loyalty and good faith, the prophylactic effect of the statute applies only to claims for breach of the duty of care.  *Malpiede v. Townson,* 780 A.2d 1075, 1093-94 (Del.Supr. 2001); *Emerald Partners v. Berlin,* 726 A.2d at 1224; *In re Lukens Inc. Shareholders Litigation,* 757 A.2d 720 (Del.Ch. 1999).

As indicated previously, Counts I and II allege violations of the duties of loyalty and good faith.  In fact, any allegation of breach of the duty of care is studiously avoided, possibly because the TRUSTEE had foreknowledge of the existence and effect of FLEMING'S Certificate of Incorporation and 8 Del.C. § 102(b)(7).  A nebulous reference to the duty of care in the TRUSTEE'S Pretrial Statement gives the Court little pause.  Counts I and II do not state a claim for breach of the duty of care and the TRUSTEE will not be allowed to prosecute such a claim on the Amended Complaint as it now stands.  This Court will not consider a mischaracterization in the Pretrial Statement to constitute a *de facto* amendment to the Amended Complaint.

8 Del.C. § 102(b)(7) is not a valid defense to the claims pleaded in Counts I and II of the Amended Complaint and Defense #1 shall be stricken.

## Affirmative Defenses #4, #5, #6, #7, #18, #19 and #27

Several affirmative defenses raise issues disposed of in a prior ruling.  The GOLDFARB INDIVIDUALS argue that pleading the defenses affirmatively is necessary to preserve the issue for appeal.  To the extent that the defenses were not previously asserted as affirmative defenses, the Court has no quarrel with that argument.  The defenses now

must be evaluated on their merits for validity purposes, however, and any invalid defense should be stricken. In that event, it is not necessary to replead a dismissed claim in order to preserve the right to appeal the dismissal. *Gavin v. AT & T Corp.,* 2003 WL 22849128 (N.D.Ill. 2003) (stating that the 7th Circuit has made it clear that a litigant need not replead dismissed claims to preserve them for appeal).

Defense #4 asserts that the TRUSTEE lacks standing to bring claims for breach of fiduciary duty and deepening insolvency. The GOLDFARB INDIVIDUALS made the same assertion in their motion to dismiss the Amended Complaint. This Court rejected that assertion in its ruling on the motion to dismiss and that ruling remains the law of the case. *In re Fleming Packaging Corp.,* 2005 WL 2205703 (Bankr.C.D.Ill. 2005). Accordingly, Defense #4 must be stricken.

Similarly, Defense #5, that the claim for deepening insolvency (Count II) fails to state a cognizable claim under Delaware law, was raised in the motion to dismiss and rejected by this Court. *Id.* The GOLDFARB INDIVIDUALS correctly point out, however, that the Court did not definitively resolve this issue since the Delaware Supreme Court has not yet ruled on it. Under these circumstances, the prudent course of action is to let the Defense #5 stand as pleaded. If nothing else, it will remind the parties and the Court that the issue is still open and perhaps additional Delaware authority will come down before this case is tried. The motion to strike Defense #5 will be denied.

Defense #6, asserted in response to Counts I and II, alleges that the claims for breach of fiduciary duty fail to state claims upon which relief may be granted. This theory was raised in the motion to dismiss the Amended Complaint and rejected in the prior ruling,

which remains the law of the case.  Defense #6 is also redundant with Defense #5.  Defense #6 will be stricken.

Defense #7 is also redundant with Defense #5.  Defense #7, whether the tort of deepening insolvency exists as a separate cause of action, is subsumed within the broader Defense #5.  Defense #7 will be stricken.

Defense #18, relying upon the prior ruling that the "Bank One Transfer" did not constitute a transfer of property in which FLEMING had an interest, asserts that the transaction "cannot, therefore, give rise to a claim for breach of fiduciary duty (Count I) or deepening insolvency (Count II) because it did not cause a detriment to Fleming, or cause Fleming to incur additional debt."  This defense is simply an argument in negation of one or more of the elements of the TRUSTEE'S case.  It is not a true affirmative defense.  Striking it will not preclude the GOLDFARB INDIVIDUALS from making the argument at subsequent stages of this litigation.  Defense #18 shall be stricken.

Defense #19 is directed at Counts V, VI and VII, asserting claims to avoid and recover preferential and fraudulent transfers.  The defense asserts that because the Court previously ruled that the "Bank One Transfer" did not constitute a transfer of an interest of FLEMING in property, that it could not support a claim for recovery of a preferential transfer or fraudulent conveyance.  The defense further asserts that the "Letter Agreement Provisions" also do not constitute a transfer of an interest of FLEMING in property subject to avoidance as a preference or fraudulent conveyance.

Pursuant to the previously referenced Opinion and Order entered August 26, 2005, the claims premised on the transfer to GOLDFARB of 3.5% of the proceeds from the sale

of FLEMING'S assets were dismissed.  Paragraphs 1 and 2 of Defense #19 assert a defense

to claims that are no longer pending and must be stricken.

In the same Opinion and Order, the Court denied the motion to dismiss the claims

premised upon the release of GOLDFARB from its obligation to pay FLEMING $735,000

under the Letter Agreement.  Those claims remain pending as part of Counts V, VI and VII.

One of the elements of the TRUSTEE'S *prima facie* case for each of those claims is proof that

the property transferred was property of FLEMING.  Paragraph 3 of Defense #19 does

nothing more than negate this element.  In addition, the argument that the release was not

a transfer of a property interest of FLEMING was rejected by this Court.  *See,* Opinion, pp.

26-29.  Accordingly, Defense #19 is properly stricken in its entirety.

Defense #27 asserts that the Court lacks personal jurisdiction over the GOLDFARB

DEFENDANTS.  The TRUSTEE correctly points out that these Defendants have previously

conceded that this Court has personal jurisdiction over them for the purpose of this

Adversary Proceeding.  Defense #27 is properly stricken.

**Affirmative Defense #14**

Defense #14, asserted against Counts I and II, states that the GOLDFARB

INDIVIDUALS resigned their positions with FLEMING effective February 10, 2003, and

cannot be held liable for any decision, act or omission after that date.  The Court agrees

with the TRUSTEE that this is not a true affirmative defense.  However, the Court believes

this defense is important in that it alleges a specific cutoff point that may assist the parties

and the Court when the evidence is considered.  Defense #14 will stand as pleaded.

**Affirmative Defense #15**

_____Defense #15, asserted against Counts I and II, asserts that the GOLDFARB INDIVIDUALS "reasonably relied in good faith on the representations and opinions of legal counsel" in executing the various loan documents, and are "fully protected in such reliance pursuant to 8 Del.C. § 141(e)."   In this Court's view, this statutory provision appears to be a potential defense to a claim for breach of the duty of care.  *See, Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins,* 2004 WL 1949290 (Del.Ch. 2004); *Brehm v. Eisner, supra.*  Having found that the TRUSTEE has not asserted a duty of care claim, arguably, § 141(e) is not a valid defense to the TRUSTEE'S claims for breach of the duties of loyalty and good faith.

At least one Delaware Chancery Court opinion casts doubt on that conclusion, however.  *In Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d 1134 (Del.Ch. 1994), Chancellor Allen indicated that § 141(e) may come into play in evaluating the inherent fairness of a questioned transaction, stating, in *dicta*, his belief that "reasonable reliance upon expert counsel is a pertinent factor in evaluating whether corporate directors have met a standard of fairness in their dealings with respect to corporate powers."  *Id.* at 1142.

Although it is difficult to see how the exculpatory effect of § 141(e) is supposed to work in the context of a claim of intentional or knowing misconduct, the benefit of the doubt at this stage will be given to the GOLDFARB INDIVIDUALS.  Defense #15 will remain pending.  Arguments over its application will be heard in future proceedings.

**Affirmative Defense #16**

_____Even though it doesn't specifically refer to 8 Del.C. § 141(e), Defense #16 alleges good faith reliance by the FLEMING directors upon various officers, professionals and

advisors.  This pleading is sufficient to properly assert § 141(e) in a different context than does Defense #15.  For the same reasons, Defense #16 will stand as pleaded.

**Affirmative Defenses #20, #21 and #22**

_____In its Opinion of August 26, 2005, the Court determined that Counts V, VI and VII of the Amended Complaint adequately stated alternative causes of action seeking avoidance of the transfer effected by execution of the Fifth Amendment which included a release of GOLDFARB'S obligation under the Letter Agreement to loan FLEMING an additional $735,000.  Although not a party to the Letter Agreement between GOLDFARB and the group of Lenders for which Bank One was Agent, FLEMING was determined to be a third-party beneficiary to the Letter Agreement.

In Defense #20, GOLDFARB contends that the obligation to make the $1.5M loan was subject to two conditions: (1) that the "lid business and related assets" sell for at least $18M, and (2) that the Lenders agree to subordinate the last $.5M of a certain payment under the Loan Agreement to repayment in full of the $1.5M loan of GOLDFARB.  It asserts that neither condition occurred and that GOLDFARB, therefore, had no duty to make the loan to FLEMING.

GOLDFARB'S Answer to the Amended Complaint is inconsistent with this assertion wherein it admits that it partially funded the $1.5M loan, in "late 2002" by transferring $765,000 to FLEMING.  Answer, ¶ 24.  This admission gives rise to the logical inference that because the loan was partially funded, the conditions were either satisfied or waived.  If so, the obligation to fund the remaining $735,000 was an unconditional obligation that was in default when the Fifth Agreement was executed.[5]

---

[5]The Letter Agreement requires the loan to be fully funded within 2 business days of the sale of the lid business.

_____It is not for the Court to determine, at this stage of the case, whether or not the conditions were satisfied or waived, as a matter of fact.  The only question today is whether the nonperformance of either condition, assuming no waiver, is a valid affirmative defense.  GOLDFARB correctly recites the general rule that the non-occurrence of a contract condition discharges the rights of a contract beneficiary.  RESTATEMENT (SECOND) OF CONTRACTS § 309 (1981).  Defense #20 adequately alleges an affirmative defense and will survive the Motion to Strike.[6]

Defense #21 asserts that the Letter Agreement is so "indefinite" as to be unenforceable.  This is a variation on the theme of Defense #20, that a contract unenforceable between the promisor and the promisee, is not enforceable by a third-party beneficiary.  This defense, while facially plausible, becomes untenable in light of the admitted fact of partial performance in the form of a $765,000 loan to FLEMING.

If a contract suffers from indefiniteness at formation, subsequent conduct of one or both parties may flesh out the missing terms.  Past performance may give meaning to indefinite terms of an agreement, removing uncertainty and establishing that a contract enforceable as a bargain has been formed.  RESTATEMENT (SECOND) OF CONTRACTS § 34(2) (1981) (citing *Yoder v. Rock Island Bank,* 47 Ill.App.3d 486, 362 N.E.2d 68 (Ill.App. 3 Dist. 1977)).  With more than half the minimum required funds already having been advanced in late 2002, the terms of the final advance are readily ascertainable from the terms of the

---

[6]GOLDFARB relies upon federal and Illinois case law.  The Letter Agreement, however, provides that Michigan law applies.  The Court makes no determination today as to choice of law but merely raises the issue for the future consideration of the parties.  The ultimate efficacy of Defense #20 will depend upon the law of the jurisdiction determined to be applicable.

previous one.  Given the admission of fact in Paragraph 24 of the Answer, Defense #21 must be stricken as legally insufficient.

Finally, in Defense #22, GOLDFARB asserts that the TRUSTEE "cannot enforce the Letter Agreement as it is an unassumable contract to make a loan," relying upon 11 U.S.C. § 365(c)(2) which provides that a trustee's power to assume executory contracts does not apply to a contract to make a loan.  GOLDFARB argues that the TRUSTEE is using his power to avoid preferences and fraudulent conveyances to accomplish what Section 365 prohibits.

What this argument fails to appreciate, however, is the complete absence of any relationship between Section 365 and the avoiding powers, both textually and from a policy standpoint.  While the avoiding powers of Sections 544(b)(1), 547 and 548 are directed only to prepetition events, Section 365 governs the postpetition relationship between a debtor and a certain class of creditors (parties to leases and executory contracts).  The limitations on the trustee's powers set forth in Section 365 are not referenced or incorporated into the avoiding powers.  The policy behind Section 365(c)(2) is not only to prevent unwilling lenders from being forced to loan money to a bankrupt entity, but also to preserve the purpose of the "carefully crafted procedures and restrictions on obtaining postpetition credit found in Section 364."  3 *Collier on Bankruptcy* ¶ 365.06(2) (15th ed.rev.).  On the other hand, the broad purpose behind the avoiding powers is to ensure the equal distribution of the debtor's assets among similarly situated creditors, in accordance with the priorities of the Code, regardless of how individual creditors were actually treated in the period before bankruptcy.

22

In this Court's view, Section 365(c)(2) does not provide a defense to the avoidance actions alleged in Counts V, VI and VII.  Defense #22 will be stricken.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###