**IT IS SO ORDERED.**


**SIGNED THIS: July 11, 2007**


_____
**THOMAS L. PERKINS**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____


## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| FLEMING PACKAGING CORPORATION, | ) | No. 03-82408 |
| a Delaware corporation, | ) | |
| Debtor. | ) | |
| _____ | ) | |
| GARY T. RAFOOL, Chapter 7 Trustee, on behalf | ) | |
| of the Estate of Fleming Packaging Corp., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 04-8166 |
| | ) | |
| THE GOLDFARB CORPORATION, a Canadian | ) | |
| corporation, MARTIN GOLDFARB, STANLEY | ) | |
| GOLDFARB, ALONNA GOLDFARB, GEORGE | ) | |
| GIALENIOS and JOSEPH ANDERSEN, | ) | |
| individually and as former directors and/or officers | ) | |
| of Fleming Packaging Corp., | ) | |
| Defendants. | ) | |
| _____ | ) | |
| GEORGE GIALENIOS and JOSEPH ANDERSEN, | ) | |
| Cross-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE GOLDFARB CORPORATION, a Canadian | ) | |
| corporation, MARTIN GOLDFARB, STANLEY | ) | |
| GOLDFARB and ALONNA GOLDFARB, | ) | |
| Cross-Defendants. | ) | |

## O P I N I O N

Before the Court is the motion filed by The Goldfarb Corporation (GOLDFARB),

Martin Goldfarb (MARTIN), Stanley Goldfarb (STANLEY) and Alonna Goldfarb

(ALONNA), to dismiss part of Count I and Counts III, IV and V of the Second Amended

Complaint brought against them by Gary T. Rafool, Chapter 7 Trustee (TRUSTEE).   Also

before the Court is the motion filed by the remaining two defendants, George Gialenios

(GIALENIOS) and Joseph Andersen (ANDERSEN), to dismiss Counts II and VI of that

complaint which are directed to them.

## FACTUAL BACKGROUND

The following facts alleged in the Second Amended Complaint are assumed to be

true for purposes of this motion.[1]   The Debtor, Fleming Packaging Corp. (DEBTOR), a

manufacturer of labels for various food, consumer and household products and distributor

of equipment and supplies for the winemaking industry, had a positive net worth of at

least $18 million at the end of 2000.   At some point during that year, the DEBTOR

encountered financial difficulties, and by the last quarter of 2001, the DEBTOR was

insolvent or within the zone of insolvency.   By the end of March, 2002, the DEBTOR'S net

worth had declined to a negative $4.9 million.   At the end of September, 2002, its net worth

was approximately a negative $16.2 million.   During that time, GOLDFARB, a Canadian

corporation, owned at least 82% of the DEBTOR'S stock and controlled the Board of

Directors. STANLEY, MARTIN and ALONNA were directors and officers of the DEBTOR.

Both ALONNA and MARTIN were officers, directors and shareholders of GOLDFARB.

---

[1]The GOLDFARB DEFENDANTS dispute the TRUSTEE'S recitation of the facts, accepting them as true only for the
purposes of their motion to dismiss.

2

STANLEY was a director and shareholder of GOLDFARB. MARTIN, ALONNA and STANLEY will be collectively referred to as the "GOLDFARB INDIVIDUALS" and the GOLDFARB INDIVIDUALS and GOLDFARB (the corporation) will be collectively referred to as the "GOLDFARB DEFENDANTS."

As early as late November, 2001, the DEBTOR knew that a default under an Amended and Restated Loan Agreement ("Loan Agreement") with Bank One, as agent for the DEBTOR'S prepetition lenders (collectively referred to as "BANK ONE"), was imminent. Substantially all of the negotiations on behalf of the DEBTOR with BANK ONE were conducted by the GOLDFARB INDIVIDUALS, without the participation or specific knowledge of the other directors of the DEBTOR. In mid-December, 2001, GOLDFARB promised to make an equity contribution to the DEBTOR if BANK ONE would agree to waive the DEBTOR'S default.

On March 11, 2002, the DEBTOR, at the GOLDFARB INDIVIDUALS' direction, agreed to consult with and to hire an investment banking firm on or before March 15, 2002, to sell the "lid business" and to hire an investment banking firm on or before June 30, 2002, to sell its wine and liquor business and any remaining assets.[2] On that same date, the GOLDFARB INDIVIDUALS delivered a letter agreement ("Letter Agreement") from GOLDFARB whereby it agreed to loan $1.5 million in cash to the DEBTOR within two days following the sale of the "lid business" for at least $18 million. On April 2, 2002, GIALENIOS joined the DEBTOR as its chief operating officer. Near the end of the summer, a financial consultant advised the DEBTOR the operational restructuring plan required an

---

[2]The deadline of June 30, 2002, was later extended to August 31, 2002.

3

investment of at least $3.5 million. The GOLDFARB INDIVIDUALS did not direct the DEBTOR to sell, or to hire an investment banker to sell, its assets.

On September 5, 2002, the DEBTOR sold the "lid business" for $26 million. Days later, on September 9, 2002, GIALENIOS was made the President and chief executive officer of the DEBTOR. GOLDFARB failed to loan the DEBTOR $1.5 million pursuant to the Letter Agreement. On September 23, 2002, ANDERSEN joined the DEBTOR as its chief financial officer. GIALENIOS became a director of the DEBTOR on November 6, 2002. On November 9, 2002, GOLDFARB transferred $765,000 to the DEBTOR. Later that month, GOLDFARB informed BANK ONE that it would not cooperate with an orderly sale of the DEBTOR'S business operations unless it was (1) repaid the $765,000 loan, (2) released from its obligations under the Letter Agreement, and (3) released from its obligation to guaranty the severance pay owed GIALENIOS.

On February 10, 2003, the GOLDFARB INDIVIDUALS directed the DEBTOR to enter into the "Fifth Amendment" (FIFTH AMENDMENT) to the Loan Agreement. Pursuant to that agreement, GOLDFARB was to receive 3.5% of the net proceeds from the sale of the business operations and was released from its obligation to loan the amount owed to the DEBTOR pursuant to the Letter Agreement. Contemporaneously, the GOLDFARB INDIVIDUALS directed the DEBTOR to terminate GOLDFARB'S guaranty of the DEBTOR'S obligation to pay GIALENIOS a stay bonus of $300,000. On that same date, the GOLDFARB INDIVIDUALS and the other directors of the DEBTOR resigned and GIALENIOS became the DEBTOR'S sole director. That month, the DEBTOR retained an

4

investment banking firm to sell its remaining assets.  At the end of April, 2003, the

DEBTOR'S net worth was a negative $18.1 million.[3]

On May 15, 2003, the DEBTOR and its operating subsidiaries filed petitions under

Chapter 11 of the Bankruptcy Code.  In July, 2003, with approval of the Court, the

DEBTOR'S operations were sold for approximately $26 million, which was substantially

less than the balance due its secured lenders.   BANK ONE transferred $673,198,

representing 3.5% of the proceeds, to GOLDFARB.  The cases filed by the DEBTOR and its

subsidiaries were converted to Chapter 7 on January 9, 2004, and Gary T. Rafool was

appointed as Trustee in all three cases.

## PROCEDURAL HISTORY

On July 7, 2004, the TRUSTEE, in his capacity as Trustee in all three cases, filed an

adversary complaint against the GOLDFARB DEFENDANTS and GIALENIOS and

ANDERSEN.  That complaint was dismissed on October 21, 2004.  On November 1, 2004,

the TRUSTEE, in his singular capacity as Trustee of the DEBTOR'S bankruptcy estate, filed

a First Amended Complaint consisting of seven counts, alleging claims against the

GOLDFARB INDIVIDUALS and ANDERSEN and GIALENIOS for breach of fiduciary

duty and for "deepening insolvency" and against GOLDFARB to recover preferential

transfers and fraudulent conveyances under Sections 544, 547 and 548 of the Bankruptcy

Code.  ANDERSEN and GIALENIOS answered the First Amended Complaint but the

GOLDFARB DEFENDANTS moved to dismiss all of the counts directed at them.  The

---

[3]This allegation, set forth in Paragraph 42 of the Second Amended Complaint, recites the year as 2002, but it seems clear from the chronology that the year was intended to be 2003.

GOLDFARB INDIVIDUALS sought dismissal of the breach of fiduciary claims on the ground that the TRUSTEE lacked standing to assert those claims.

On August 26, 2005, this Court issued its opinion and order, questioning the validity of "deepening insolvency" as an independent cause of action against corporate officers and directors of the corporation under Delaware law, but, given the uncertainty surrounding the theory, declined to dismiss that count.[4]  In determining that the TRUSTEE had standing to pursue the claims against the GOLDFARB INDIVIDUALS for breach of fiduciary duty, this Court noted that the DEBTOR'S corporate charter, as permitted by Delaware law, contained an exculpatory provision which shields corporate directors from breaches of the duty of care.  This Court noted also that such exculpatory provisions afford no insulation against a claim based upon a director's breach of the duty of loyalty.[5]

In the preferential transfer and fraudulent conveyance counts against GOLDFARB, the TRUSTEE sought recovery of three transfers: (1) transfer of 3.5% of sale proceeds; (2) release from obligation to pay $735,000 under the Letter Agreement; and (3) payment of $33,269 made on February 25, 2003.[6]  This Court granted GOLDFARB'S motion to dismiss only as to the transfer of the sale proceeds, finding that the sales proceeds which GOLDFARB had received were funds which were subject to BANK ONE'S lien, which would not have been paid to the DEBTOR'S bankruptcy estate in any event.

---

[4]*In re Fleming Packaging Corp.*, 2005 WL 2205703 (Bankr.C.D.Ill. 2005).

[5]The TRUSTEE relies on certain favorable portions of that opinion on a theory akin to "law of the case."  As the GOLDFARB DEFENDANTS correctly note, however, the TRUSTEE reads too much into this Court's recitation of his factual allegations, which were of course taken as true for purposes of the motion to dismiss.  This Court has  made no binding determinations concerning the TRUSTEE'S claims for breach of fiduciary duties.

[6]The original complaint also sought to avoid the release of GOLDFARB'S guaranty of GIALENIOS' severance pay.

The GOLDFARB DEFENDANTS answered the First Amended Complaint, raising twenty-seven affirmative defenses. Of those, the TRUSTEE moved to strike all but six. After this Court's ruling on the motion to strike, twelve affirmative defenses remained standing.[7] The parties proceeded with discovery and engaged in mediation in an attempt to resolve all, or at least some of the disputed matters. Mediation proved unsuccessful, however, and based upon information obtained during discovery, the TRUSTEE sought, and was granted, leave to file this Second Amended Complaint. The Second Amended Complaint, though similar in many respects to the prior complaint, both narrows and expands the relief sought. Count I, alleging breach of fiduciary duty, formerly brought only against the GOLDFARB INDIVIDUALS, is now also brought against GOLDFARB and the TRUSTEE makes separate allegations for breach of the duty of care and of the duty of loyalty. Count II, also alleging breach of fiduciary duty, is brought against GIALENIOS and ANDERSEN. The counts alleging deepening insolvency have been dropped. Counts III, IV and V, brought against GOLDFARB to recover transfers made by the DEBTOR as preferential or fraudulent, adds to the transfers sought to be avoided the release of GOLDFARB'S obligation to guaranty the "stay bonus" owing GIALENIOS by the DEBTOR.[8] All of the GOLDFARB DEFENDANTS and both ANDERSEN and GIALENIOS have filed motions to dismiss, returning this proceeding to square one.[9]

---

[7]*In re Fleming Packaging Corp.*, 351 B.R. 626 (Banrk.C.D.Ill. 2006).

[8]It is not clear whether the original complaint's reference to the GIALENIOS "severance release" is the same obligation now referred to as the "stay bonus."

[9]Throughout the early stages of this proceeding, all parties and the Court have treated the GOLDFARB INDIVIDUALS collectively. On a motion for summary judgment or at trial, this homogeneous treatment will likely come to an end, and their liability for actions taken as directors or as officers must be determined on an individual basis. *Sample v. Morgan*, 914 A.2d 647 (Del.Ch. 2007).

## LEGAL STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, a court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000). Dismissal is unwarranted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690 (7th Cir. 1999). Conclusory allegations not supported by factual assertions will not be taken as true. *Mid-America Regional Bargaining Ass'n v. Will County Carpenters Dist. Council*, 675 F.2d 881(7th Cir. 1982).

As has been made clear by both the Supreme Court and the Seventh Circuit Court of Appeals, however, the federal system requires only notice pleading and a plaintiff need not plead all of the elements of his claims or all of the facts necessary to support them. *Chapman v. Stricker,* 81 Fed.Appx. 77 (7th Cir. 2003); *Bartholet v. Reishauer A.G. (Zürich),* 953 F.2d 1073, 1078 (7th Cir. 1992) (complaints do not need to match facts to elements of a legal theory). The federal notice pleading standard applies to all claims brought in federal court, including claims arising under state law. *Hefferman v. Bass,* 467 F.3d 596, 599-600 (7th Cir. 2006). Where state law establishes minimum pleading requirements necessary to properly allege a state law cause of action, those requirements do not apply and are irrelevant in federal court where Federal Rules 8 and 9 control. *Id.*

## THE GOLDFARB DEFENDANTS

The motion of the GOLDFARB DEFENDANTS to dismiss parts of the Second Amended Complaint consists of three distinct parts. First, GOLDFARB seeks dismissal

of Count I brought against both GOLDFARB and the GOLDFARB INDIVIDUALS, which alleges breach of fiduciary duty, against itself. Second, the GOLDFARB INDIVIDUALS seek dismissal of a portion of the allegations of Count I against them. Finally, GOLDFARB seeks dismissal of the allegations in Counts III, IV and V pertaining to the release of GOLDFARB'S obligation to guarantee the stay bonus payable to Gialenios and the transfer by BANK ONE of a portion of the net sale proceeds.

**Breach of Fiduciary Duty of Care against the GOLDFARB INDIVIDUALS**

Count I of the Second Amended Complaint alleges both a breach of the fiduciary duty of care and of the duty of loyalty. The claims against the GOLDFARB INDIVIDUALS for breach of the fiduciary duty of care are summarized in Paragraph 49. That paragraph alleges that the GOLDFARB INDIVIDUALS breached their fiduciary duty of care by:

(i)     failing to direct [the DEBTOR] to conduct an orderly sale of its operations as a going concern or to obtain additional financing necessary to restructure [the DEBTOR] at least as early as December 2001 when [the GOLDFARB INDIVIDUALS] knew or should have known that [the DEBTOR] could not continue its operations;

(ii)     directing [the DEBTOR] to pursue an operational restructuring plan on or about March, 2002, without informing themselves as to the financial viability of such plan;

(iii)     failing to abandon the restructuring plan in favor of the agreed to orderly sale of [the DEBTOR'S] operations on or about August 27, 2003,[10] when the [GOLDFARB INDIVIDUALS] knew or should have known that the restructuring plan required $3.5 million of new capital, which the [GOLDFARB INDIVIDUALS] knew or should have known was not available; and

---

[10]The Court assumes that the date referenced in Paragraph 49(iii) of the Second Amended Complaint is a mistake and that the TRUSTEE meant to refer to August 27, 2002, the date that Keystone Consulting Group advised the DEBTOR that the operational restructuring plan required an investment of at least $3.5 million.

(iv)   failing to direct [GOLDFARB] to loan the $1.5 million to [the DEBTOR] as required by the Letter Agreement on or before September 7, 2002.

The GOLDFARB INDIVIDUALS seek dismissal of those claims on three grounds. First, they contend that those allegations, not amounting to a showing of gross negligence, fail to state a claim for a breach of the duty of care.   Second, the GOLDFARB INDIVIDUALS argue that the facts as pleaded would not overcome the presumption of the business judgment rule.   Last, the GOLDFARB INDIVIDUALS seek dismissal on the basis that those claims are barred by the DEBTOR'S certificate of incorporation which contains an exculpatory clause as authorized by Section 102(b)(7) of the Delaware General Corporation Law.

Corporate directors and officers owe the corporation a triad of fiduciary duties: due care, loyalty and good faith. *McMullin v. Beran*, 765 A.2d 910 (Del. 2000).  These duties do not operate intermittently but must be carried out at all times. *Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001).   While the duties of due care and loyalty are largely regarded as separate and distinct under Delaware law, the duty of good faith has, at times, been considered, "inseparably and necessarily intertwined" with the duties of due care and loyalty. *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693, 745-46 (Del.Ch. 2005).

A director of a corporation is "charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993).  The court in *In re Walt Disney* described this duty, stating:

The fiduciary duty of due care requires that directors of a Delaware corporation "use that amount of care which ordinarily careful and prudent

10

men would use in similar circumstances," and "consider all material information reasonably available" in making business decisions . . . .

907 A.2d at 749.  Liability for a director's breach of the duty of care may arise in two contexts.  In the leading case of *In re Caremark Intern. Inc. Derivative Litigation*, 698 A.2d 959, 967 (Del.Ch. 1996), the court explained that the duty of care may be breached by either (1) director action or nonaction following from an "ill-advised or negligent" board decision, or (2) from "an *unconsidered failure of the board to act* in circumstances in which due attention would, arguably, have prevented the loss." *Id.*  Under the latter category, referred to as liability for "failure to monitor," which calls into question the board of director's oversight responsibility for actions of corporate officers or employees, liability is predicated upon "a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists."  As to the former, actual liability for business decisions made by the board of directors is not, as one unschooled in the corporate realm might presume, result oriented, i.e., a decision which turns out badly equals liability.  Rather, application of the business judgment rule prevents courts from passing upon the merits of business decisions.

The business judgment rule is one of the most fundamental doctrines in corporate law.  First and foremost, it is a standard of judicial review.  *Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 927 (Del. 2003).  The business judgment  rule is a "presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company."  *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).  The rule has no application where the directors stand on both sides of a transaction or have a personal financial interest

in a transaction.  Nor does it shield a director who did not act in good faith.  By application

of the business judgment rule, director liability for breaching the duty of care is predicated

upon concepts of gross negligence.  *Citron v. Fairchild Camera & Instrument Corp.*, 569 A.2d

53 (Del. 1989).

Second, and nearly as important, the business judgment rule is "process oriented."

*In re Caremark,* 698 A.2d at 967-68.  The duty of care does not have a substantive element

and courts do not "measure, weigh or quantify directors' judgments."  *Brehm v. Eisner,* 746

A.2d 244, 264 (Del. 2000).  Rather, as explained by the court in *In re Walt Disney*:

> What should be understood, but may not widely be understood by courts or
> commentators who are not often required to face such questions, is that
> compliance with a director's duty of care can never appropriately be
> judicially determined by reference to *the content of the board decision* that leads
> to a corporate loss, apart from consideration of the good faith or rationality
> of the process employed.  That is, whether a judge or jury considering the
> matter after the fact, believes a decision substantively wrong, or degrees of
> wrong extending through "stupid" to "egregious" or "irrational," provides
> no ground for director liability, so long as the court determines that the
> process employed was either rational or employed in *a good faith* effort to
> advance corporate interests.  To employ a different rule – one that permitted
> an "objective" evaluation of the decision – would expose directors to
> substantive second guessing by ill-equipped judges or juries, which would,
> in the long-run, be injurious to investor interests.  Thus, the business judg-
> ment rule is process oriented and informed by a deep respect for all *good faith*
> board decisions.

907 A.2d at 749-50.

This Court reviewed the purpose and functional application of the business

judgment rule in *In re Fleming Packaging Corp.*, 351 B.R. 626 (Bankr.C.D.Ill. 2006), an earlier

decision in this case.  That ruling was rendered on the TRUSTEE'S motion to strike certain

affirmative defenses predicated upon the business judgment rule.  Today, the application

of the rule arises in a different context.  In an unusual twist, the Court must concern itself

with the application of the rule at the earliest stage of the lawsuit, a matter not considered before. Nonetheless, the conclusions reached in the prior decision are instructive here. This Court concluded that the business judgment rule, as a standard of judicial review, was not a true affirmative defense and that it did not need to be pleaded to be operative. In so noting, however, this Court characterized the rule as "defensive in nature."

The TRUSTEE alleges in Paragraph 49 that the GOLDFARB INDIVIDUALS breached the duty of care at four different points during the DEBTORS' financial demise. First, the TRUSTEE alleges that the GOLDFARB INDIVIDUALS failed to direct a sale or to obtain additional financing in December, 2001, or at some point prior thereto, when they knew or should have known that the DEBTOR was financially unable to continue. Second, the TRUSTEE alleges that the GOLDFARB INDIVIDUALS breached the duty of care by directing the DEBTOR, in March, 2002, to pursue an operational restructuring plan without informing themselves as to the financial viability of such a plan. The third allegation is their failure to abandon that plan in late August, 2002, when they were advised by consultants that an investment of at least $3.5 million would be required to fund the plan. Finally, the TRUSTEE alleges that the GOLDFARB INDIVIDUALS' failure to direct GOLDFARB to loan the $1.5 million in early September, 2002, as required by the Letter Agreement, constituted a breach of the duty of care.

This Court rejects the GOLDFARB INDIVIDUALS' contention that Paragraph 49 fails to state a claim for breach of the fiduciary duty of care as well as their contention that the TRUSTEE has not pleaded sufficient facts to overcome the business judgment rule. Neither the more stringent Delaware "fact pleading" nor the elevated federal pleading

standard for derivative suits set forth in Fed.R.Civ.Proc. 23.1 govern here.[11]  *See In re Tower Air, Inc.*, 416 F.3d 229 (3rd Cir. 2005).  Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[12]   A complaint need only provide the minimum facts necessary to give the defendant notice of the claim and to enable the filing of a response.  *McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005).  As the Seventh Circuit Court of Appeals has repeatedly emphasized, the standard of notice pleading governs in cases brought in federal court and a plaintiff is not required to plead either facts or legal theories.  *Hefferman v. Bass, supra*.  The court's command is crystal clear: "Notice is what counts.  Not facts; not elements of 'causes of action'; not legal theories."  *Id.* at 600.  In fact, the court has identified  that the danger lies in pleading too much – not too little.  *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642 (7th Cir. 2006).  While the business judgment rule casts a heavy burden upon the plaintiff asserting a lack of due care, it need not be rebutted at the pleading stage.

Moreover, on a motion to dismiss that challenges the sufficiency of the allegations of a complaint, the focus is not limited to the specific facts alleged or how the plaintiff characterizes those facts as part of the legal theory.  Instead, the real question is whether relief is possible based on *any legal theory* under *any set of facts* that could be established consistent with the allegations.  *McDonald v. Household Intern., Inc.*, 425 F.3d 424, 428 (7th

---

[11]In order to comply with Delaware's Chancery Rules, a plaintiff must "allege with particularity facts raising a reasonable doubt that the corporate action being questioned was properly the product of business judgment."  *Brehm v. Eisner*, 746 A.2d at 254-55.  Nor does the heightened standard  of Fed.R.Civ. Proc. 9(b) which requires fraud to be pled with particularity,  apply to breach of fiduciary claims which do not sound in fraud.  *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197 (D.Del. 2000).

[12]The allegations of Count I are indeed "bare boned."  The parties have, however, engaged in extensive discovery, attempted mediation and presumably, know well in which direction these cryptic allegations may lead.  Given that, application of the "notice pleading" standard is seemingly contrived.  It is to be applied here, however, even as the litigation nears its fourth year, the same as it is applied in the very first stage of a lawsuit.

Cir. 2005).  The same broad inquiry must be made with respect to defenses asserted as a basis for dismissal.  *Clark v. City of Braidwood,* 318 F.3d 764, 768 (7th Cir. 2003) (on motion to dismiss, question is only whether there is any set of facts that if proven would establish a defense to the statute of limitations).

Count I could permit proof that decisions were made that were "ill-advised or negligent" or that action was not taken because of lack of due attention or failure to monitor.  Likewise, in counteraction to the business judgment rule, the TRUSTEE could establish that the information gathering process or the decision making process followed by the DEBTOR'S board of directors was systemically flawed or deficient.  Count I permits such proof.  Nothing more is needed to repulse the motion to dismiss.  It is simply not necessary at the pleading stage for the TRUSTEE to allege facts that would "overcome the presumption" of the business judgment rule.

The GOLDFARB INDIVIDUALS further seek dismissal of the allegations contained in Paragraph 49, alleging a breach of the duty of care, contending that those claims are barred by Section 102(b)(7) of the Delaware General Corporation Law and the DEBTOR'S certificate of incorporation which contains an exculpatory clause.  Article VI of the DEBTOR'S Restated Certificate of Incorporation, which tracks the language of Section 102(b)(7),  provides:

> A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.[13]

---

[13]Section 174 governs the liability of directors for the unlawful payment of dividends or stock purchase or redemption. 8 Del.C. Section 174.

15

Article VI, applying only to directors, exculpates those directors from liability for monetary damages for violations of the duty of care. It does not protect directors from liability resulting from claims based upon breach of the duties of loyalty and good faith or intentional conduct. Paragraph 49 of the Second Amended Complaint does not claim bad faith.

The TRUSTEE, relying on *Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001), asserts that the Court may not properly consider the effect of the DEBTOR'S exculpatory provision until the Court has made a determination whether the challenged transactions were "entirely fair." The standard of entire fairness – which, like the business judgment rule, is one of judicial review, is summed up by the court in *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983):

> There is no "safe harbor" for such divided loyalties in Delaware. When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain. The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts.
>
> * * *
>
> The concept of fairness has two basic aspects: fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock. However, the test for fairness is not a bifurcated one as between fair dealing and price. All aspects of the issue must be examined as a whole since the question is one of entire fairness. (Citations omitted).

457 A.2d at 710-11. Although the entire fairness standard applies when the presumption of the business judgment rule is rebutted, it also applies in the first instance, in place of the business judgment rule, where it is clear from the allegations of the complaint that the fiduciary stands on both sides of the transaction. *Emerald Partners*, 787 A.2d at 95. Because an exculpatory provision only shields a director from *damages* but not from a determination that a breach of duty occurred, where a claim for breach of fiduciary duty is premised upon both a breach of the duty of care and the duty of loyalty or good faith such that the court must examine the "entire fairness" of the transaction, whether the fiduciary exercised due care will be a relevant factor. Moreover, only after a determination that a plaintiff is entitled to damages will the court look to the effect of an exculpatory provision upon the defendant's liability for damages. However, where a claim is based solely on a breach of the duty of care, the court may dismiss the claim based on an exculpatory provision at the outset because the entry of a monetary judgment would be uncollectible. *Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001).

Although the TRUSTEE characterizes the duty of care claim as a fallback position, the allegations of Paragraph 49 mirror and are intertwined with those of Paragraph 50. The care exercised by the GOLDFARB INDIVIDUALS, as directors of the DEBTOR, must necessarily be considered as part of the "entire fairness" inquiry under the duty of loyalty claim. Under these circumstances, the duty of care claim alleged in Paragraph 49 should not be dismissed. If a subsequent determination is made that one or more of the DEBTOR'S directors breached their duty of care, the effect of the exculpatory provision as to damages must be considered at that time.

The GOLDFARB INDIVIDUALS' motion to dismiss on the basis of Article VI must also be denied on a different ground.  As this Court noted in its earlier opinion, the TRUSTEE does not specify whether the challenged actions set forth in Count I were taken by the GOLDFARB INDIVIDUALS in their capacity as officers or in their capacity as directors.  Article VI, by its terms, is only applicable to directors.  *In re Century Electronics Mfg., Inc.*, 345 B.R. 33 (Bankr.D.Mass. 2006) (applying Delaware law).  Ruling on a motion *in limine* filed by the director/officer defendants seeking to preclude evidence barred by debtor's exculpatory clause, the court in *Century Electronics* concluded that it would not be feasible, prior to trial, to parcel out which actions were taken by the defendants in their capacities as directors as opposed to officers.[14]  Likewise, such a determination cannot be made based on the allegations of the Second Amended Complaint.

**Breach of Fiduciary Duty of Loyalty against the GOLDFARB INDIVIDUALS**

The claims against the GOLDFARB INDIVIDUALS for breach of the fiduciary duty of loyalty are summarized in Paragraph 50.  That paragraph alleges that the GOLDFARB INDIVIDUALS breached their duty of loyalty by:

> (i)    failing to abstain from the decision whether to sell [the DEBTOR'S] operations as a going concern or pursue a restructuring plan in early 2002 when [the GOLDFARB INDIVIDUALS] knew or should have known that [the DEBTOR] was insolvent and their interests as directors and/or officers of [GOLDFARB] was in direct conflict with the interest of [the DEBTOR] and its creditors;
>
> (ii)   holding secret meetings and entering into undisclosed transactions with Bank One at all times relevant to the Complaint in an effort to hide information from [the DEBTOR'S] other directors, officers and employees;

---

[14]In reaching that conclusion, the court discussed whether the exculpatory provision would apply to actions taken by the defendants in their roles as officers, noting that the cases were divided on the issue.  The parties have not addressed this issue.

(iii)    directing [the DEBTOR] to finance a restructuring plan in early 2002 with credit provided by unsecured creditors in hopes of resurrecting the value of [GOLDFARB'S] stock in [the DEBTOR];

(iv)    conditioning the orderly sale of [the DEBTOR'S] remaining business operations in September 2002 on the concessions to the [GOLDFARB INDIVIDUALS] and [GOLDFARB] set forth in the Fifth Amendment;

(v)    negotiating the terms of the Fifth Amendment in November 2002 through February 2003 on behalf of both [GOLDFARB] and [the DEBTOR]; and

(vi)    directing [the DEBTOR] to enter into the Fifth Amendment on February 10, 2002 effecting transfers for the benefit of [GOLDFARB], including the transfer of the 3.5% Interest, the Release and the Gialenios Release.

The GOLDFARB INDIVIDUALS seek dismissal of the allegations of Paragraph 50(i) and (iii), purportedly alleging claims for the breach of the duty of loyalty, asserting that those allegations raise no more than a breach of the duty of care.

The uncompromising fiduciary duty of loyalty is best described by the court in *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939):

Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. A public policy, existing through the years, and derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interest of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers. The rule that requires an undivided and unselfish loyalty to the corporation demands that there shall be no conflict between duty and self-interest. The occasions for the determination of honesty, good faith and loyal conduct are many and varied, and no hard and fast rule can be formulated. The standard of loyalty is measured by no fixed scale.

19

Most typically, a breach of the duty of loyalty occurs when a fiduciary appears on both sides of a transaction or receives a personal benefit not shared by all shareholders. *In re Walt Disney*, 907 A.2d at 751.

In essence, Paragraph 50(i) restates the same allegations as Paragraph 49(i), that the GOLDFARB INDIVIDUALS breached their duty of care by failing to direct a sale at the end of 2001, but implicating the duty of loyalty by adding that their interests as directors and officers of GOLDFARB were in direct conflict with the interests of the DEBTOR and its creditors.   Similarly Paragraph 50(iii) shadows Paragraph 49(ii), alleging that the GOLDFARB INDIVIDUALS breached their fiduciary duty of care by directing the DEBTOR to pursue a restructuring plan in early 2002, at the expense of the unsecured creditors, motivated by the hope of regaining the value of their stock in the DEBTOR.

The GOLDFARB INDIVIDUALS contend that the mere allegation of GOLDFARB'S ownership interest in the DEBTOR without reference to specific transactions where they appeared on both sides or were to receive a benefit not shared by other shareholders, is insufficient to give rise to a conflict of interest or to implicate the duty of loyalty.   They maintain that an inherent conflict is not created by virtue of their relationship with GOLDFARB.  In response, the TRUSTEE claims that the GOLDFARB INDIVIDUALS were not disinterested, and that upon insolvency, the interests of GOLDFARB were at variance with those of the DEBTOR and its creditors, and that the GOLDFARB INDIVIDUALS directed the DEBTOR'S business operations in a manner to benefit GOLDFARB.

Dual or multiple directorships are not impermissible.   *Rabkin v. Philip A. Hunt Chemical Corp.*, 498 A.2d 1099 (Del. 1985).   Such a director owes the same duty of good

management to each corporation, and it must be exercised in light of what is best for both corporations. *Weinberger v. UOP, supra.* But more than just a dual directorship is at issue here, as the GOLDFARB INDIVIDUALS are also alleged to be shareholders of GOLDFARB, giving them a direct financial interest that the TRUSTEE asserts was in conflict with the financial interest of the DEBTOR. It is that financial interest in GOLDFARB that forms the primary basis for their alleged lack of disinterestedness, as the general thrust of the TRUSTEE'S allegations is that the GOLDFARB INDIVIDUALS were acting to serve their own financial interest, through GOLDFARB, in the negotiations with BANK ONE and other actions taken as directors of the DEBTOR, rather than the interest of the DEBTOR and its creditors. It is this theory of the conflict of interest that cabins the individual actions or transactions alleged to have occurred in violation of the duty of loyalty. Viewed in this light, the breaches of the duty alleged in Paragraph 50(i) and (iii) easily fall within the broad scope of potential breaches arising from the identified conflict of interest.[15]

**Breach of Fiduciary Duty against GOLDFARB**

GOLDFARB contends that the allegations of Count I alleging that it breached its fiduciary duty must be dismissed because: (1) the claim is barred by the statute of limitations; (2) it owed no duty of care to the DEBTOR; and (3) none of the allegations implicate GOLDFARB, as a corporate actor.

Because GOLDFARB was not named as a defendant in the counts alleging breach of fiduciary duty in either of the preceding complaints, GOLDFARB contends that the claims asserted against it in Count I are barred by the Delaware three-year statute of

---

[15]The movants' implication that an allegation that looks like a breach of the duty of care cannot be a breach of the duty of loyalty, is not correct. Often, the only differentiation is the motivation: negligence versus self-interest.

21

limitations for asserting breach of fiduciary claims. According to GOLDFARB, the Delaware statute of limitations ran on February 10, 2006, three years after the execution of the FIFTH AMENDMENT.[16] GOLDFARB asserts that Section 108(a), which extends a statute of limitations for commencing an action by a debtor for two years after the date of the order for relief, unless the limitations period would expire later, is also unavailing. The DEBTOR'S Chapter 11 petition was filed on May 15, 2003, and the two-year extension period ended on May 15, 2005, prior to the expiration of the applicable state law statute of limitations.

In an attempt to overcome the barrier of the statute of limitations, the TRUSTEE contends that his claims are preserved by the relation back doctrine under Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

The central inquiry under Rule 15(c)(2) is whether the factual allegations of the original pleading puts the opposing party on notice of the amended claims. *In re Gerardo Leasing, Inc.*, 173 B.R. 379, 388 (Bankr.N.D.Ill. 1994). The analysis is an extremely fact-sensitive one. Thus, the relation back analysis focuses on the notice given by the general fact situation alleged in the original complaint. The emphasis is not on the legal theory of the action, but on whether the specified conduct of the defendant upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim. *Bularz v. Prudential Ins. Co. of America*, 93 F.3d 372, 379 (7th Cir. 1996). Where the claims are not based on the same

---

[16]The TRUSTEE does not dispute this assertion.

22

factual allegations, a party will not be permitted to use the relation back doctrine solely to "bootstrap" time-barred claims onto viable actions, even to maximize recovery for the bankruptcy estate. *In re Slaughter Co. & Assoc., Inc.*, 242 B.R. 97 (Bankr.N.D. Ga. 1999); *In re Gaslight Club, Inc.*, 167 B.R. 507, 517-18 (Bankr.N.D.Ill. 1994)(*citing Matter of Stavriotis*, 977 F.2d 1202, 1206 (7th Cir. 1992)).

The TRUSTEE argues that GOLDFARB cannot show that it has been unfairly surprised or prejudiced because it shares common counsel with the GOLDFARB INDIVIDUALS and the original complaint included breach of fiduciary duty claims, though not asserted against GOLDFARB, but against the GOLDFARB INDIVIDUALS. The TRUSTEE blurs the distinction between the relation back of an added claim under Rule 15(c)(2) and the substitution of a defendant under Rule 15(c)(3), as a result of misnomer. Generally, under that provision, the plaintiff must establish: (1) the claim being asserted against the new defendant must arise out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) the new defendant must receive timely notice of the claims in the original pleading, so that the new defendant is not prejudiced in maintaining a defense; and (3) the new defendant knew or should have known that "but for a mistake concerning the identity of the proper party" it would have been named in the original complaint. Because notice under this rule can be actual, constructive, or imputed, whether the originally named party and the new party have a "shared attorney" or if there is a "community of interest" between the two parties are factors to be considered. *See Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152 (N.D.Cal. 2005); *Pompey v. Lumpkin*, 321 F. Supp.2d 1254 (M.D.Ala. 2004). Those factors are not considerations under Rule 15(c)(2), however, which is applicable here. Rather, as noted, the inquiry is whether the new claim stems from

the same conduct, transaction, or occurrence which was set forth in the prior counts against

GOLDFARB.

In the prior complaints, the allegations against GOLDFARB were limited to

avoidance, as preferential or fraudulent, of the following four transfers, referred to by the

TRUSTEE as the "Goldfarb Transfers":

1.      The DEBTOR'S payment to GOLDFARB by check dated February 25, 2003, in the amount of $33,269.

2.      The postpetition payment to GOLDFARB of 3.5% of the proceeds from the sale of the DEBTOR'S assets which was agreed to prepetition.

3.      The release of GOLDFARB'S contractual obligation to loan the DEBTOR an additional $735,000 as required by the Letter Agreement.

4.      The release of GOLDFARB'S contractual obligation to guaranty the severance pay of codefendant, George Gialenios.

The prior complaints alleged breach of fiduciary duty claims against the GOLDFARB

INDIVIDUALS, GIALENIOS and ANDERSEN, but not against GOLDFARB.

The breach of the fiduciary duty of care claims alleged against GOLDFARB in

Paragraph 49 of the Second Amended Complaint are, for the most part, factually disparate

from the previous allegations seeking avoidance of the "Goldfarb Transfers."  The single

exception is the allegation set forth in Paragraph 49(iv) which bases a claim on the failure

to fund the loan required by the Letter Agreement.  This allegation is simply a different

legal theory based on a previously pleaded fact.  As such, it relates back under Rule

15(c)(2). The breach of the fiduciary duty of loyalty claims, asserted in Paragraph 50, are

also, in large part, factually distinct from the Goldfarb Transfers.  The two exceptions are

the allegations set forth in subparagraphs (iv) and (vi) which are based on the transfers

arising out of the FIFTH AMENDMENT. These include the Goldfarb Transfers other than the $33,269 payment. Accordingly, subparagraphs (iv) and (vi) of Paragraph 50 relate back while the other subparagraphs do not. The claims against GOLDFARB that do not relate back and are time-barred are set forth in Paragraph 49(i), (ii) and (iii) and Paragraph 50(i), (ii), (iii) and (v).

Next, GOLDFARB contends that Count I must be dismissed against it as a matter of law because it cannot be held liable for a breach of the duty of care. Relying on *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.*, 137 F.Supp.2d 502 (S.D.N.Y. 2001), GOLDFARB contends that under Delaware law, the duty owed by a controlling shareholder is one of loyalty, not of care. Concluding that Delaware law may refer to a controlling shareholder's duty of care, but never in the absence of an attendant duty of loyalty, the court in *Color Tile* explained:

> The purpose of treating controlling shareholders as fiduciaries – to ensure that the controlling shareholder does not abuse its position of control to obtain some benefit to the detriment or exclusion of the minority shareholders – argues against the imposition of a separate duty of care in circumstances in which the interests of all the shareholders are aligned.

The TRUSTEE contends that *Color Tile* is distinguishable on that very basis, asserting that the interests of GOLDFARB and the DEBTOR'S minority shareholders were not aligned. This duty of care, as conceived by the TRUSTEE, would require GOLDFARB to review information "reasonably available to it prior to making decisions affecting [the DEBTOR] and its creditors, including the appointment of independent members to [the DEBTOR'S] board of directors and overseeing the board's decisions to ensure that decisions were untainted either by inattention or conflicts of interest." The TRUSTEE

suggests that in early 2002, the interests of GOLDFARB would have been better served by allowing the DEBTOR to continue operations whereas the DEBTOR'S creditors would have been better served by exploring other options, such as a refinancing or a sale of the DEBTOR as a going concern.

Under Delaware law, a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation. *Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110 (Del. 1994). When a shareholder exercises control over a corporation by directing its actions, that shareholder assumes the same fiduciary duties as those owed by a director to the corporation. *Harris v. Carter*, 582 A.2d 222 (Del.Ch. 1990). The scope and extent of this fiduciary duty, owed to the corporation and to its minority shareholders, depends upon the nature and circumstances of the challenged action or inaction. *Matter of Reading Co.*, 711 F.2d 509, 517 (3rd Cir. 1983). This factually intense inquiry must await resolution at a later point in this proceeding. The TRUSTEE has alleged that GOLDFARB owned at least 82% of the DEBTOR'S outstanding stock and that it controlled the DEBTOR'S board of directors. Whether GOLDFARB exercised control over the DEBTOR by directing its actions and breached its fiduciary duties in the course of that control remains to be proved by the TRUSTEE. For purposes of the motion to dismiss, it is sufficient that those allegations have been made and that GOLDFARB is on notice of the nature of the claim that it must defend.

GOLDFARB also argues that the facts alleged in Count I are insufficient to state a claim for breach of fiduciary duty against it. Specifically, GOLDFARB contends that the allegations of the complaint only allege conduct by the GOLDFARB INDIVIDUALS and

26

that those allegations are inconsistent with conduct taken by a corporate actor.  In response, the TRUSTEE points to his allegations that the GOLDFARB INDIVIDUALS, wearing their hats as directors and officers of the DEBTOR and of GOLDFARB, held secret meetings with BANK ONE and induced the DEBTOR to continue in business by agreeing to loan the DEBTOR $1.5 million, but later failed to keep that promise.

Under the applicable notice pleading standard, GOLDFARB is clearly on notice of the claims against it.  The factual details come later.  Moreover, a corporation can only act through its individual representatives.  The allegations are not inherently inconsistent with the conduct of a corporate actor.  The TRUSTEE has not pleaded himself out of court on these claims.

**Avoidance of Preferential and Fraudulent Transfers**

The TRUSTEE, in Counts III, IV and V, seeks to avoid the same four transfers previously labeled as the "Goldfarb Transfers," as preferential, as fraudulent under the Bankruptcy Code, or as fraudulent under state law.  The transfers the TRUSTEE seeks to avoid are (1) 3.5% of the sale proceeds to GOLDFARB (the "Bank One Transfer"); (2) the release of GOLDFARB'S obligation under the Letter Agreement to make the loan of $1.5 million; (3) a transfer by check of $33,269; and (4) the release of its obligation to guaranty the stay bonus of $300,000 payable to GIALENIOS (the "Gialenios Release").

In its motion, GOLDFARB seeks dismissal of three of the four transfers alleged in Counts III, IV and V, excepting only the release of GOLDFARB'S obligation under the Letter Agreement.  As GOLDFARB notes, this Court, in its prior opinion, determined that the transfer of the sale proceeds was not a transfer of an interest of the DEBTOR in

property which was subject to avoidance by the TRUSTEE.  In his response to the motion, the TRUSTEE consents to the dismissal of the allegations of the Second Amended Complaint with respect to the transfer of the sale proceeds and the GIALENIOS Release, leaving only the transfer of $33,269 subject to the motion to dismiss.[17]  GOLDFARB has submitted documentation regarding the payment made by the DEBTOR and invites the Court to treat its motion to dismiss as a motion for summary judgment as to this claim.

Relying on an insurance invoice and correspondence fixing the DEBTOR'S share of the premium, GOLDFARB contends that the payment cannot be avoided as a preference under Count III because the payment, made February 25, 2003, was for directors and officers liability insurance coverage provided to the DEBTOR for the period beginning December 1, 2002, and ending November 30, 2003.  In response, the TRUSTEE contends that GOLDFARB'S position that the payment was not made on an antecedent debt is contradicted by its statement that the payment was made nearly three months after the coverage began.  In reply, GOLDFARB, prorating the premium over the term of coverage, asserts that $27,720.65 was paid in advance for coverage provided from March 1, 2003 to November 30, 2003.

Generally, the date a debt for an insurance premium is incurred is the date specified in the policy for the payment of the premium.  *Matter of Advance Glove Mfg. Co.*, 761 F.2d 249 (6th Cir. 1985).  The insurance policies are not part of the record.  The documentation submitted by GOLDFARB does not support its contention that the payment was not made in satisfaction of an antecedent debt.  To the contrary, it lends support to the TRUSTEE'S

---

[17]In his response, the TRUSTEE reserves the right to appeal all issues pertaining to the Bank One transfer and the release of the obligation to guarantee the stay bonus payable to GIALENIOS.

allegations.  The invoice from the insurance agency shows a billing date of December 18, 2002, and contains the notation "Premium Due and Payable upon receipt of Invoice."  Also submitted is a letter dated February 17, 2003, to the DEBTOR, from GOLDFARB, allocating the total premium shown to be due between the DEBTOR, GOLDFARB and another related corporation and requesting that the payment be made.

Because the insurance coverage was in fact provided to the DEBTOR, GOLDFARB contends that the payment cannot be avoided as a  fraudulent transfer under Counts IV and V because the DEBTOR received reasonably equivalent value.  Although he mischaracterizes it as an affirmative defense, the TRUSTEE contends that the issue of reasonably equivalent value presents a question of fact.  In reply, GOLDFARB states that it is beyond dispute that the DEBTOR received insurance coverage in exchange for the payment and that the insurance policy was procured through a reputable broker.  Absent any allegations of fraud or collusion by the TRUSTEE, GOLDFARB contends the allegations fail to state a claim and should be dismissed.

Whether a debtor received reasonably equivalent value in exchange is largely a question of fact and is determined by the circumstances relevant to the transaction.  *In re Lowery*, 335 B.R. 199 (Bankr.M.D.Fla. 2005); *In re Mussa*, 215 B.R. 158 (Bankr.N.D.Ill. 1997).  Ordinarily, a payment  for services actually rendered can only be shown to be fraudulent on the theory that what the debtor received either had no value or had value less than reasonable equivalent for the monies paid for those services.  *In re 21st Century Satellite Communications, Inc.*, 278 B.R. 577, 582 (Bankr.M.D.Fla. 2002).  Again, it is premature to attempt to resolve that question of fact at this time.

### GIALENIOS AND ANDERSEN

GIALENIOS and ANDERSEN seek dismissal of Count II, alleging that they breached their fiduciary duties to the DEBTOR and its creditors and of Count VI, alleging that they knowingly assisted the GOLDFARB DEFENDANTS in breaching their fiduciary duties owed to the DEBTOR and its creditors, asserting that the TRUSTEE can neither allege nor prove any set of facts which would support his claim.

Count II of the Second Amended Complaint alleges both a breach of the fiduciary duty of care and of the duty of loyalty. The TRUSTEE alleges that GIALENIOS and ANDERSEN knew or should have known, at least by September 2002, that the GOLDFARB DEFENDANTS were stalling the sale of the DEBTOR in order to obtain concessions from BANK ONE. He also alleges that in directing the DEBTOR to enter into the FIFTH AMENDMENT, GIALENIOS and ANDERSEN increased the amounts of their severance payments and their share of the net sale proceeds. According to the TRUSTEE, GIALENIOS and ANDERSEN directed the sale of the DEBTOR'S "packaging business" to Propack Systems, LLC, for $387,805.01, though that business was actually worth $5.7 million.[18] The claims against GIALENIOS and ANDERSEN alleging breach of the fiduciary duty of care are summarized in Paragraph 69. That paragraph alleges that GIALENIOS, as a director and officer and ANDERSEN, as an officer, breached their fiduciary duties of care by:

> (i)      (as to Gialenios only) developing an operational restructuring plan in
> April 2002 without adequately considering the financial viability of that plan;

---

[18]The TRUSTEE has filed a separate adversary proceeding against the purchaser, alleging that the transfer was a fraudulent conveyance and seeking the difference between the fair market value on the date of the transfer less the amount paid by the purchaser. *Rafool v. Propack Systems L.L.C.*, Adv. No. 05-8124. The Court currently has a motion for summary judgment on the remaining count under advisement.

(ii)    failing to direct [the DEBTOR] to conduct an orderly sale of its opera-
tions as a going concern or to obtain additional financing necessary to
restructure FPC when Gialenios and Andersen knew or should have known
that [the DEBTOR] could not continue its operations without additional
capital;

(iii)    delaying the orderly sale of [the DEBTOR] while the [GOLDFARB
INDIVIDUALS] negotiated certain concessions in favor of [GOLDFARB];

(iv)    failing to demand that [GOLDFARB] pay the amounts owed to [the
DEBTOR] under the Letter Agreement; and

(v)    failing to inform themselves of the fair value of the Packaging Busi-
ness prior to approving its sale to ProPack Systems, LLC.

In Paragraph 70, the TRUSTEE alleges that GIALENIOS and ANDERSEN breached their

fiduciary duties of loyalty by "putting their own interest, as well as the interest of the

[GOLDFARB DEFENDANTS] ahead of the interests of [the DEBTOR] and its creditors by,

among other things, directing [the DEBTOR] to enter into the Fifth Amendment."

In support of their motion to dismiss, in addition to adopting the motion to dismiss

filed by the GOLDFARB DEFENDANTS, GIALENIOS and ANDERSEN set forth a detailed

factual analysis in justification of their decisions and actions, asserting that their actions did

not constitute gross negligence. Those considerations will be relevant at a subsequent stage

of this case, but it is premature to consider them on a motion to dismiss for failure to state

a claim. For the same reasons stated earlier with respect to the claims against the

GOLDFARB INDIVIDUALS, the TRUSTEE has adequately stated a claim against

GIALENIOS and ANDERSEN for breach of their fiduciary duties of care and loyalty. The

motion to dismiss Count II must be denied.

In Count VI of the Second Amended Complaint, the TRUSTEE alleges that

GIALENIOS and ANDERSEN knowingly assisted the GOLDFARB DEFENDANTS in

31

breaching their fiduciary duties as set forth in Count I, including their execution of the
FIFTH AMENDMENT on behalf of the DEBTOR.  While the TRUSTEE captions this count
as "assisting in breaches of fiduciary duty," this Court treats it as a claim for aiding and
abetting breach of fiduciary duty.  The basis of such a claim is the knowing participation
by a third party in a breach of a fiduciary duty by another.  *Trenwick America Litigation
Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del.Ch. 2006).

Under Delaware pleading rules, in order to survive a motion to dismiss, the
complaint must allege facts which meet the four elements of a claim for aiding and abetting
a breach of a fiduciary duty: (1) the existence of a fiduciary relationship; (2) a breach of the
fiduciary's duty; (3) knowing participation in the breach by the third party; and (4)
damages proximately caused by the breach.  *Weinberger v. Rio Grande Industries, Inc.*, 519
A.2d 116, 131 (Del.Ch. 1986); *Penn Mart Realty Co. v. Becker*, 298 A.2d 349 (Del.Ch. 1972).
Under the applicable federal standard of notice pleading, however, more general notice of
the nature of the claim is sufficient.

GIALENIOS and ANDERSEN do not argue that Count VI fails to state a claim for
aiding and abetting a breach of fiduciary duty, but contend that the relief sought is barred
by the rejection of the cause of action for deepening insolvency.  This Court finds their
arguments to be misdirected and Count VI will stand.

Accordingly for the forgoing reasons, the motions to dismiss filed by the
GOLDFARB DEFENDANTS and GIALENIOS and ANDERSEN will be granted in part and
denied in part.

32

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###