**IT IS SO ORDERED.**

**SIGNED THIS: December 20, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| FLEMING PACKAGING CORPORATION, | ) | No. 03-82408 |
| a Delaware corporation, | ) | |
| Debtor. | ) | |
| | ) | |
| GARY T. RAFOOL, Chapter 7 Trustee, on behalf | ) | |
| of the Estate of Fleming Packaging Corp., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 04-8166 |
| | ) | |
| THE GOLDFARB CORPORATION, a Canadian | ) | |
| corporation, MARTIN GOLDFARB, STANLEY | ) | |
| GOLDFARB, ALONNA GOLDFARB, GEORGE | ) | |
| GIALENIOS and JOSEPH ANDERSEN, | ) | |
| individually and as former directors and/or officers | ) | |
| of Fleming Packaging Corp., | ) | |
| Defendants. | ) | |
| | ) | |
| GEORGE GIALENIOS and JOSEPH ANDERSEN, | ) | |
| Cross-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE GOLDFARB CORPORATION, a Canadian | ) | |

**corporation, MARTIN GOLDFARB, STANLEY  )
GOLDFARB and ALONNA GOLDFARB,        )
                         Cross-Defendants.  )**

**O P I N I O N**

This matter is before the Court on the Motion to Approve Settlement and Compromise filed by the Trustee, Gary T. Rafool (TRUSTEE), seeking court approval of a proposed settlement agreement with two of the Defendants, George Gialenios and Joseph Andersen (referred to by name or as the "settling Defendants"). While the agreement might seem beneficial to the estate at first glance, careful review leads to the conclusion that the benefits are illusory and the detriments onerous. The proposed settlement is not in the best interests of the estate and must be denied.

**THE PROPOSED SETTLEMENT**

The Settlement Agreement is embodied in a seven page document entitled "Settlement Agreement, Assignment and Release" (the "Agreement" or "Settlement Agreement"). Although the Agreement is between the TRUSTEE and Gialenios and Andersen, a central figure to the deal is Liberty International Underwriters Canada (LIBERTY), identified in the Agreement as the insurance company that issued the directors and officers insurance policy (the "D&O Policy" or "Policy") under which the individual defendants claim coverage. The parties represented at the hearing that not only is LIBERTY defending under a reservation of rights, but that it recently filed an action in Toronto, Canada, seeking a declaratory judgment that Gialenios, Andersen and the Goldfarb Corporation are not covered under the D&O Policy.

Previously, the TRUSTEE made a settlement demand to Gialenios and Andersen offering to accept a payment of $1 million that they were to obtain from LIBERTY under the D&O Policy, in exchange for a release of the TRUSTEE'S claims against them. Gialenios and Andersen presented the proposal to LIBERTY and asked that it be accepted, but LIBERTY refused.

Notwithstanding LIBERTY'S recalcitrance, Gialenios, Andersen and the TRUSTEE decided to forge ahead with the concept. The Agreement, dated as of October 10, 2007, increases the settlement payment to $1.5 million, payable solely from the D&O Policy with no recourse, personally, against Gialenios and Andersen. Instead of an actual payment of money, however, and apparently in anticipation of LIBERTY'S continued refusal to go along, Gialenios and Andersen assign their rights under the D&O Policy to the TRUSTEE, leaving it to him to enforce the "settlement" against LIBERTY via a lawsuit for bad faith refusal to settle. In the Agreement, Gialenios and Andersen expressly disclaim, among other things, any warranty as to (i) the validity of the D&O Policy or the TRUSTEE'S ability to collect from LIBERTY, (ii) whether they are even entitled to coverage under the Policy, and (iii) whether they have under applicable law, the power to make the assignment of their interest under the Policy to the TRUSTEE.

In return for the assignment of the right to sue LIBERTY and, as it turns out, the right to defend LIBERTY'S suit asserting lack of coverage, Gialenios and Andersen generously agree to "assist the Trustee in his prosecution of the Trustee's claims" against the other defendants, and in an unrelated avoidance action, by cooperating with interviews and testifying at trial without subpoena. They also agree to assist the TRUSTEE'S filing

3

and prosecution of a declaratory judgment action against LIBERTY. The generosity of Gialenios and Andersen has its limits, however, as the TRUSTEE agrees to pay for their costs of travel, lodging and meals.

In addition to a mutual release of all claims between the TRUSTEE and the settling Defendants, the Agreement contains an eye-opening indemnification provision. It precludes the TRUSTEE from settling with any other Defendant unless the TRUSTEE requires and that Defendant agrees to assign to the TRUSTEE all claims such Defendant might have against Gialenios and Andersen, which claims the TRUSTEE shall not pursue. Further, the TRUSTEE is required to defend and indemnify Gialenios and Andersen against any claim for contribution or indemnity asserted by any other Defendant or by LIBERTY. The TRUSTEE'S financial exposure is limited, however, to the proceeds of any judgment against or settlement with such other Defendant or LIBERTY.

## **LEGAL STANDARDS**

Pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, after notice and hearing, the court may approve a compromise or settlement proposed by the trustee. The bankruptcy court is charged with determining whether the proposed compromise is fair and equitable and in the best interest of the bankruptcy estate. *Depoister v. Mary M. Holloway Foundation,* 36 F.3d 582 (7th Cir. 1994). The court may not simply accept the trustee's representation that the settlement is reasonable. Instead, the court must apprise itself of all facts necessary to evaluate the settlement and make an informed and independent judgment about the settlement. *Matter of Energy Co-op, Inc.,* 886 F.2d 921 (7th

Cir. 1989). The court must examine the terms of the proposed settlement, and the risks and rewards of not settling, and "determine whether the proverbial bird in the hand is worth two in the bush." *Matter of Rimsat, Ltd.,* 224 B.R. 685, 688 (Bankr.N.D.Ind. 1997). The consideration that the estate is receiving must be reasonably equivalent to the value of the disputed claim. *Id.*

### **ANALYSIS**

A "settlement" contemplates a final, agreed resolution of disputed issues in order to avoid the risks and expense of further litigation. The proposed compromise settles nothing. It provides no immediate payment or other tangible benefit to the estate. The $1.5 million figure is illusory, misleading and largely meaningless. Rather than bringing an end to litigation, it serves to embroil the TRUSTEE in at least one, and possibly two, lawsuits venued in Canada. Further, it seeks to endow the Court with jurisdiction that does not otherwise exist.

A bankruptcy court may have subject matter jurisdiction to hear a dispute between a debtor and its insurance company regarding the debtor's rights under the policy to the extent that the policy is property of the estate and the issue affects the amount of property available for distribution. *UNR Industries, Inc. v. Continental Cas. Co.,* 942 F.2d 1101, 1103 (7th Cir. 1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1586, 118 L.Ed.2d 305 (1992); *Matter of Celotex Corp.,* 152 B.R. 667 (Bankr.M.D.Fla. 1993). Such jurisdiction, however, is only "related to" the bankruptcy proceeding so that the bankruptcy court may not enter a final order. *In re Stone & Webster, Inc.,* 367 B.R. 523 (Bankr.D.Del. 2007); *In re S.N.A. Nut Co.,* 210 B.R. 140, 142 (Bankr.N.D.Ill. 1997).

5

A bankruptcy court does not have subject matter jurisdiction, even "related to" jurisdiction, to hear a dispute between a non-debtor third party and that party's insurance company. It makes no difference that the third party is a defendant in an avoidance action brought by the trustee in bankruptcy. *See TIG Ins. Co. v. Smolker,* 264 B.R. 661 (Bankr.C.D. Cal. 2001) (no bankruptcy jurisdiction over adversary defendant's insurance company's declaratory judgment action despite possible effect on potential indemnification claims against debtor).

LIBERTY'S insurance policy is not property of the DEBTOR and was not an asset of the estate when the case was filed. The declaratory judgment action recently commenced in Toronto, Canada, by LIBERTY, a Canadian insurance company, is presumably properly venued there pursuant to Canadian law and the terms and provisions of the insurance policy. Even if the TRUSTEE was allowed to take an assignment of the rights of Gialenios and Andersen under the Policy, the TRUSTEE would be stepping into their shoes and would be bound by the terms and provisions of the Policy, and subject to Canadian law, to the same extent they are. The Court sees no basis for the TRUSTEE'S argument that the proper post-assignment forum for LIBERTY'S declaratory judgment action and the bad faith refusal to settle action is the bankruptcy court.

Jurisdiction and venue aside, substituting the LIBERTY lawsuits for the pending claim against Gialenios and Andersen is a poor trade for the TRUSTEE. Trial is scheduled to begin on the TRUSTEE'S Complaint in May, 2008. Discovery is largely complete but for expert discovery, which will be done even if Gialenios and Andersen settle out. So the TRUSTEE would save little, if any, preparatory and trial time by disposing of those claims.

The LIBERTY claims, on the other hand, are a whole new ball game. The declaratory action is newly filed and the bad faith claim has not yet been filed. Moreover, proving the bad faith claim will require proof of the value of the claims against Gialenios and Andersen. Even if they are dismissed from this adversary, the TRUSTEE will still have to present evidence establishing their liability and damages in a different forum, in addition to establishing the insurance coverage and bad faith of LIBERTY. In addition, if the LIBERTY litigation proceeds in Canada, it is likely the TRUSTEE would have to retain Canadian counsel.

Not only does the proposed compromise not resolve anything, it adds a new party, LIBERTY, to the dispute, as well as new non-bankruptcy issues. A proposed compromise that settles nothing but merely substitutes one form of litigation for another is properly denied approval. *In re United States Brass Corp.,* 255 B.R. 189 (Bankr.E.D.Tex. 2000) (compromise that substituted arbitration for litigation, where movant anticipated additional litigation over insurer's bad faith, denied as not in best interests of estate).

As correctly pointed out by the Goldfarb Defendants, in reviewing a settlement between a plaintiff and fewer than all co-defendants, the court must carefully consider its fairness to the non-settling parties as it affects their substantive rights. *In re Munford, Inc.,* 172 B.R. 404 (Bankr.N.D.Ga. 1993). Approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced. *In re Devon Capital Management, Inc.,* 261 B.R. 619, 623 (Bankr.W.D.Pa. 2001). In particular, settlements that propose to bar non-settling parties from bringing contribution, indemnification or other claims against

settling defendants are viewed skeptically by courts and such provisions are given close scrutiny. *Id.*

The Agreement does not contain a provision that directly bars the Goldfarb Defendants from asserting claims against Gialenios and Andersen. A similar result obtains, however, on an indirect basis, via the Indemnification provision set forth in paragraph 9 of the Agreement whereby the TRUSTEE is barred from settling with the Goldfarb Defendants unless he requires them to release any and all claims against Gialenios and Andersen.[1] This provision is unfair to the Goldfarb Defendants in that their ability to settle with the TRUSTEE in the future would be burdened by an inability to seek contribution or indemnity from Gialenios and Andersen, relinquishment of rights for which they received no consideration. It also hamstrings the TRUSTEE in his efforts to settle with the Goldfarb Defendants as it requires a potentially deal-killing release of contribution and indemnification rights to be a part of any settlement.

The Indemnification provision further provides for the TRUSTEE to defend and indemnify Gialenios and Andersen against any claim for contribution or indemnity. Thus, if the TRUSTEE obtains a judgment against the Goldfarb Defendants, and those Defendants, or LIBERTY, subsequently sue Gialenios and Andersen, the TRUSTEE is obligated to use the judgment proceeds to pay the costs of defense and attorney fees incurred by and any damages awarded against Gialenios and Andersen. The benefit of this adversary proceeding could thus be eroded or lost entirely due to events beyond the

---

[1] The provision is couched in terms of an assignment and agreement not to sue, but the effect is equivalent to a release.

TRUSTEE'S control. It is difficult to understand why the TRUSTEE would agree to accept this potential liability.

In sum, the proposed Settlement Agreement is a great deal for Gialenios and Andersen, but the benefits are all one-sided. It contains elements of unfairness to the Goldfarb Defendants and to LIBERTY. The Agreement resolves nothing and merely substitutes one kind of litigation for another kind of at least equal complexity, will not save the TRUSTEE any time or money, engenders further litigation that will require more expense, inconvenience and a longer period of time to conclude, and exposes the TRUSTEE and the estate to additional risks and liabilities. For these reasons, the Agreement is not in the best interests of the estate and the Motion for its approval will be denied.[2]

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[2] The briefs include allegations that counsel for the TRUSTEE improperly disclosed confidential statements made at the December, 2006, mediation. The Goldfarb Defendants ask that such disclosures be stricken from the briefs and that sanctions be awarded. The statements allegedly improperly disclosed played no part in the Court's consideration of the issues at bar and have not served to color or prejudice the Court's view of any party, or otherwise impaired the Court's ability to accord fairness and impartiality to all parties going forward. The Court considers the allegations, although perhaps justified, to be immaterial and no relief will be awarded at this time.